65 N.Y.2d 213 (1985)
State Division of Human Rights, on Complaint of Catherine McDermott, Respondent,
v.
Xerox Corporation, Appellant.
Court of Appeals of the State of New York.
Argued March 27, 1985.
Decided May 7, 1985.
Richard N. Chapman and Brian P. O'Connor for appellant.
Rosamond Prosterman, Roberto Albertorio and Albert J. Kostelny, Jr., for State Division of Human Rights, respondent.
Catherine McDermott, respondent pro se.
Judges MEYER, SIMONS, KAYE and ALEXANDER concur with Chief Judge WACHTLER; Judge JASEN dissents and votes to reverse in a separate opinion.
*215 Chief Judge WACHTLER.
The respondent, Xerox Corporation, refused to hire the complainant, Catherine McDermott, because she was obese. In administrative proceedings under the Human Rights Law (Executive Law art 15), McDermott's complaint that Xerox unlawfully discriminated against her because of a disability was sustained by the Commissioner of Human Rights but was rejected by the Human Rights Appeal Board. On judicial review, the Appellate Division reinstated the Commissioner's determination and Xerox appeals. The question is whether the complainant's obesity constitutes a disability within the meaning of the Human Rights Law (Executive Law § 292 [21]).
In 1974 complainant, a computer programmer, applied for a job with Xerox. On August 8 the company offered her a position as a systems consultant, provided she passed a preemployment medical examination. On August 14 she accepted the offer. The physical examination took place on August 26. The examining physician found that complainant was 5 feet 6 inches and weighed 249 pounds. On the portion of the form labeled "Notes  Describe every abnormality in detail," the doctor stated that complainant was "obese". No other remarkable clinical or laboratory findings were indicated. On the basis of her weight alone, the examining physician concluded that complainant was medically "not acceptable".
This report was reviewed by Dr. Wright, the company's Director of Health Services, who concurred in the recommendation. On September 3, 1974, the company sent complainant a letter informing her that she had not passed the physical and thus would not be hired by Xerox. She was later informed that she had failed the exam solely because of her obesity.
On August 13, 1975, McDermott filed a complaint with the State Division of Human Rights charging Xerox with a discriminatory employment practice. She relied on a recent amendment to the Human Rights Law which, effective September 1, 1974, prohibited employers from refusing to employ persons with disabilities (Executive Law § 296 [1] [a], L 1974, ch 988, § 2). At that time the statute provided that the "term `disability' means a physical, mental or medical impairment resulting from anatomical, physiological or neurological conditions with prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to physical, mental *216 or medical conditions which are unrelated to the ability to engage in the activities involved in the job or occupation which a person claiming protection of this article shall be seeking." (Executive Law § 292 [20] [now 21].)[1]
At the hearing on the complaint, McDermott testified that Dr. Wright informed her that the job offer was withdrawn because she had the "disease" of "active gross obesity". She testified that she had always been overweight, but that it had not prevented her from performing any task or function. It had not interfered with her ability to raise five children under 10 years of age after her husband died. Neither did it prevent her from working outside of the home at jobs similar to the one originally offered by Xerox. In fact, she stated her weight had not inhibited her in any way, except in carrying bundles for long distances.
Dr. Wright testified that he had not examined complainant but had instructed physicians conducting preemployment physicals to use height and weight tables published in 1966 by an insurance company to ascertain acceptable weight ranges for job applicants. Complainant exceeded the scheduled weight range for her height by approximately 100 pounds. Upon receipt of the examining physician's report, Dr. Wright entered a diagnosis of "gross obesity". On the basis of that condition alone, he determined that complainant should not be hired because, in his opinion, gross obesity posed a significant risk to short and long term disability and life insurance programs administered by respondent.
The Commissioner sustained the complaint. He found that "complainant's obesity, clinically observed as an abnormality during the course of a pre-employment physical examination administered on August 26, 1974, constituted a physical or medical impairment demonstrable by medically accepted clinical diagnostic techniques." He also noted that the company had submitted no evidence that persons with this condition were unable to perform the job of a systems consultant satisfactorily. He found that complainant had held comparable positions before she applied to Xerox and afterwards. Although her weight remained essentially constant throughout that period, she had performed the jobs "in a satisfactory manner, without apparent *217 difficulty or significant periods of absence due to illness." He rejected as a "semantic equivocation" the company's position that complainant's ability to perform satisfactorily demonstrated that she was free of any impairment, noting that the respondent's own medical examiner "clinically observed an abnormal medical condition" which resulted in her "summary disqualification". The Commissioner concluded that the company had discriminated against complainant on the basis of a disability unrelated to her employment in violation of the Human Rights Law. He ordered the company to offer her a position of systems consultant, or equivalent title, with back pay, and directed other remedial measures.
The Human Rights Appeal Board reversed and dismissed the complaint. The Board held that "being overweight without proof of any impairment" is not a disability covered by the statute. It also observed that since there was no evidence that complainant suffered from any other disorder "[h]er overweight can only be attributed to a voluntarily induced condition unrelated to any glandular or organic deficiency." The Board concluded: "although Xerox's policy may appear to be discriminatory to overweight individuals it does not constitute unlawful discrimination under the Human Rights Law."
In this proceeding commenced pursuant to Executive Law § 298, the Appellate Division reversed the Board and reinstated the Commissioner's determination. The court noted that the Board's scope of review was limited to the standard applicable to judicial review of administrative determinations (State Off. of Drug Abuse Servs. v State Human Rights Appeal Bd., 48 N.Y.2d 276, 283). It found that there was substantial evidence to support the Commissioner's determination that complainant suffered a disability, and that the Commissioner's conclusion that obesity itself can constitute an impairment was a reasonable, commonsense interpretation of the statute. The court observed that no reason was offered as to why the statute should be construed in such a way as to afford no protection to a person like complainant who suffers from obesity "but has no other demonstrable impairment", while "a person with the same degree of obesity accompanied by high blood pressure or diabetes" could not be denied employment under the statute if those conditions, like complainant's, were unrelated to job performance (102 AD2d 543, 549).
Xerox urges that it did not deny complainant employment because of a present impairment but because of a statistical likelihood that her obese condition would produce impairments *218 in the future. It urges that persons with such conditions are not disabled within the meaning of the statute and can be refused employment because of the adverse impact their employment may have on disability and life insurance programs.
Initially we note that if a person suffers an impairment, employment may not be denied because of any actual or perceived undesirable effect the person's employment may have on disability or life insurance programs. Under the statute in effect at the time this case arose, employment could only be refused if the condition was related to the performance of the duties of the position (Matter of State Div. of Human Rights v Averill Park Cent. School Dist., 59 AD2d 449, affd 46 N.Y.2d 950; State Div. of Human Rights [Ghee] v County of Monroe, 48 N.Y.2d 727; Matter of Westinghouse Elec. Corp. v State Div. of Human Rights, 49 N.Y.2d 234).[2] Since the Commissioner found, and it is not disputed, that there is no relationship between complainant's condition and her ability to perform the job she seeks, the company could not refuse to hire her because of the collateral effect her impairment, if it be that, might have on existing disability and life insurance programs.
The only question then is whether the complainant suffered an impairment within the meaning of the statute. Although the Commissioner found that she did, the company urges that the determination is not supported by substantial evidence because there is no evidence that her condition presently places any restrictions on her physical or mental abilities. It urges that the Commissioner misinterpreted the statute in holding that her condition of obesity itself constitutes an impairment. These arguments might have some force under typical disability or handicap statutes narrowly defining the terms in the ordinary sense to include only physical or mental conditions which limit the ability to perform certain activities (see, e.g., 29 USC § 706 [6] [now 7], defining a "handicapped individual" as a person who "has a physical or mental impairment which substantially limits one or more of such person's major life activities"). However in New York, the term "disability" is more broadly defined. The statute provides that disabilities are not limited to physical or *219 mental impairments, but may also include "medical" impairments. In addition, to qualify as a disability, the condition may manifest itself in one of two ways: (1) by preventing the exercise of a normal bodily function or (2) by being "demonstrable by medically accepted clinical or laboratory diagnostic techniques" (Executive Law § 292 [20] [now 21]).
Fairly read, the statute covers a range of conditions varying in degree from those involving the loss of a bodily function to those which are merely diagnosable medical anomalies which impair bodily integrity and thus may lead to more serious conditions in the future. Disabilities, particularly those resulting from disease, often develop gradually and, under the statutory definition, an employer cannot deny employment simply because the condition has been detected before it has actually begun to produce deleterious effects. Thus, the Commissioner could find that the complainant's obese condition itself, which was clinically diagnosed and found to render her medically unsuitable by the respondent's own physician, constituted an impairment and therefore a disability within the contemplation of the statute.[3]
The respondent also urges that, as a matter of policy, the statutes should only apply to immutable disabilities and not to those which are correctable. The argument is based on the fact that complainant does not appear to suffer from any other disorder causally related to overweight. This led respondent's physician to conclude at the hearing that her condition was probably due to bad dietary habits. However, the Commissioner expressly rejected that opinion as speculative under the circumstances. In any event, the statute protects all persons with disabilities and not just those with hopeless conditions.[4] Because the complainant is claiming the benefit of a statutory right, any policy decision limiting that right must come from the Legislature *220 and not from the courts. We have found nothing in the statute or its legislative history indicating a legislative intent to permit employers to refuse to hire persons who are able to do the job simply because they have a possibly treatable condition of excessive weight.
Accordingly, the order of the Appellate Division should be affirmed.
JASEN, J. (dissenting).
Since the Commissioner ignored governing internal guidelines of the State Division of Human Rights in rendering the determination that complainant's obesity constituted a "disability" within the meaning of Executive Law § 292 (21), his decision was not based upon substantial evidence.
Chapter 988 of the Laws of 1974, popularly known as "The Flynn Act", was enacted to afford those who suffer from physical, mental or medical disabilities protection under the Human Rights Law against discrimination, in employment, housing and places of public accommodation, resort or amusement (see, Memorandum of Approval, Governor Malcolm Wilson, Legislative Bill Jacket, L 1974, ch 988, at 82, 1974 McKinney's Session Laws of NY, at 2123). On July 10, 1974, the general counsel to the State Division of Human Rights promulgated "Flynn Act Guidelines" to clarify the responsibilities of the Division in the implementation of the antidiscrimination measure. (See, Memorandum of Law No. 576, Division of Human Rights.) The question whether obesity constitutes a disability within the meaning of The Flynn Act was specifically addressed by the guidelines. Memorandum of Law No. 576, at pages 5-6, noted that "[a] second category of disability consists of external characteristics which may or may not be symptomatic of disease. An individual's weight problem, for example, may be the result of a glandular imbalance, which would seem to be a physiological condition preventing the exercise of a normal bodily function within the meaning of the statute. On the other hand, it may be due simply to a poor and uncontrolled diet. * * * In any case involving this type of disability, the regional office should try to ascertain the existence of an underlying condition bringing the disability within the statutory definition set forth in Human Rights Law § 292 (20) [renum § 292 (21), by L 1976, ch 532, § 1]. Only if the condition comes within the statutory definition of `disability' is the individual protected from discrimination based thereon. Of course, questions may arise in particular cases requiring resolution by a medical expert". Consequently, if complainant's obesity were caused by an improper diet, rather than a glandular *221 disorder or similar uncontrollable condition, no disability within the meaning of the statute would exist.
The Flynn Act Guidelines, adopted by the Division of Human Rights pursuant to clear legislative authority (Executive Law §§ 294, 295 [5]), are legally controlling upon the instant proceeding. An administrative rule, regulation, or general order enacted by an agency in accord with the powers delegated to it has the full force and effect of law and governs the conduct of all persons subject to it. (See, Matter of Weekes v O'Connell, 304 N.Y. 259; Ford Motor Credit Co. v Milhollin, 444 US 555, 565; 2 Am Jur 2d, Administrative Law, §§ 291, 292.) That the Flynn Act Guidelines have apparently not been filed with the Secretary of State does not vitiate their internal force as a governing Division of Human Rights policy. Among the acts of administrative agencies to which weight as statutory interpretations is attached are regulations, interpretations, interpretive bulletins, rulings and opinions, agency decisions, and even more informal statements of policy. (2 Am Jur 2d, Administrative Law, § 245 [citations omitted].) The subject guidelines represent a contemporaneous construction of a broadly worded statute by the officials charged with the responsibility of setting its machinery in action, and should not be disregarded except for the most cogent reasons. (1 Cooper, State Administrative Law, at 266.)
There was not a shred of medical evidence introduced, at any level of the proceedings below, which focused upon the cause of complainant's obesity at the time she made application for employment. This is conceded by all parties. Notwithstanding the instruction of Memorandum of Law No. 576, which advises the regional office of the Division of Human Rights to ascertain the existence of an underlying cause of obesity for the purposes of this Act, the Commissioner failed to inquire as to whether complainant had control over her weight problem. As explicitly recognized by the guidelines, mere observance of the external manifestations of obesity cannot resolve the critical, threshold question of whether complainant suffers from a cognizable disability. As the Commissioner neglected to determine the underlying cause of complainant's obesity, his determination must be vacated for lack of substantial evidence.
The Division of Human Rights disputes the applicability of The Flynn Act guidelines by asserting "[i]t should be readily apparent from the following authority [General Counsel's Opn, Nov. 21, 1979 (re Methadone dependency and alcoholism); Matter of Perez v New York State Human Rights Appeal Bd., 70 AD2d 558 (1st Dept 1979)] that the 1974 Flynn Act Guidelines *222 memorandum * * * has been subsequently modified and are no longer controlling on this point." (Brief for State Div of Human Rights, at 13, unnumbered n.) This argument is without merit. First, the authorities relied upon by the Division only concern the reclassification of "drug addiction" as a "disability" rather than as a "social problem". No mention of the classification of obesity was made, nor was there any intent to effect a wholesale repeal of the Flynn Act Guidelines. Second, even if the cited authorities represented a shift in policy by the Division, we are here concerned only with the policy in effect in 1974 when the complainant was refused employment (majority opn, at p 218, n 2). Since the authorities relied upon by the Division were decided subsequent to the 1974 refusal to hire, they have no application to the instant case.
The arguments advanced by the majority against application of the guidelines are unavailing. The guidelines were dated July 10, 1974, complainant was refused employment on September 3, 1974, and the Commissioner rendered his determination in favor of complainant on April 9, 1982. There can be little question that the guidelines apply to an allegedly discriminatory act occurring less than two months after their promulgation. While it is true that the guidelines were to be subject to amendment after the Division "has acquired a fund of experience in the course of its administration of the Flynn Act" (Division of Human Rights Memorandum of Law No. 576, at 2), it cannot seriously be suggested on this record that this "fund of experience" was earned during the two months intervening the date of promulgation and the date of the refusal to hire, so as to effect a sub silentio repeal of the guidelines. Despite the majority's unsupported assertion that the "Commissioner's experience administering the law had prompted him to abandon" the guidelines, any shift in policy in 1982 reflecting the Commissioner's experience should not be accorded retroactive effect to events in 1974. (Majority opn, at p 218, n 2.) The majority's attempt to apply a purported 1982 policy to a 1974 occurrence is as inappropriate as applying a 1985 statutory scheme to the 1974 occurrence.
It has long been settled that a unit of the executive branch must recognize and obey its own regulations promulgated pursuant to and within valid statutory authority. (See, People ex rel. Doscher v Sisson, 222 N.Y. 387, 394.) A policy decision to limit application of the Human Rights Law was made by the Division of Human Rights. Where obesity is at issue, the status of that condition as a disability can only be determined by inquiry as to *223 the underlying cause of the obesity (Division of Human Rights Memorandum of Law No. 576). It is this policy which was abrogated by the Commissioner. To expand the scope of Executive Law § 292 (21) to render obesity a "disability per se", as has been done by the Commissioner and a majority of this court, is a manifest usurpation of an unequivocally stated executive branch policy. It is institutionally improper for this court to acquiesce in the Division's disregard of self-imposed rules. (See, Smolla, The Erosion of the Principle That Government Must Follow Self-Imposed Rules, 52 Fordham L Rev 472.) In this State, it should be assumed that one subject to an official charge of employment discrimination, with a view toward substantial penalties, is legally entitled to insist upon the observance of policies duly promulgated by the Commissioner and operative at the time of the occurrence in question. (See, United States ex rel. Bilokumsky v Tod, 263 US 149, 155 [Brandeis, J.].) By upholding the determination of the Commissioner, the majority affixes its judicial imprimatur upon an unauthorized extension of the jurisdictional reach of the Human Rights Law. I cannot concur in this result.
Accordingly, I would reverse the order of the Appellate Division and remit to the Division of Human Rights for further proceedings.
Order affirmed, with costs.
NOTES
[1] The agency initially determined that it lacked jurisdiction to hear the complaint because the decision not to hire complainant occurred prior to the effective date of the amendment dealing with disabilities. However the Appellate Division reversed noting the company did not refuse to hire complainant until it withdrew the offer of employment by the letter sent on September 3, 1974, after the law went into effect (73 AD2d 806). That determination is not in issue on this appeal.
[2] The statute has since been amended to provide broader protection by requiring the employer to go further and show that the condition prevents the employee or prospective employee from performing in a reasonable manner (L 1979, ch 594, eff July 10, 1979; see, Matter of Miller v Ravitch, 60 N.Y.2d 527). This amendment, however, is not retroactive and thus, the case now before us is governed by the statute in effect in 1974 when the complainant was refused employment (Matter of Westinghouse Elec. Corp. v State Div. of Human Rights, 49 N.Y.2d 234, 237).
[3] In view of the fact that the Commissioner found complainant's condition constituted an actual impairment, there is no need to consider the effect of the 1983 amendment to Executive Law § 292 (21), which expanded the definition of disability to include conditions which are "regarded by others as such an impairment" (L 1983, ch 902, § 1, eff Aug. 8, 1983).
[4] The "internal guidelines" relied upon by the dissenter are not relevant. They are nothing more than suggested approaches mentioned in a letter memorandum when the disability provision was first added to the Human Rights Law. They were not incorporated in binding regulations. Neither were they intended to express a fixed policy of the Executive Department since the letter expressly designates them as "tentative principles". At the time the hearing was held in this case the Commissioner's experience administering the law had prompted him to abandon these "tentative" guidelines, which he was free to do.