*637 OPINION OF THE COURT
Thomas J. Murphy, J.
By notice of petition dated April 10, 1985, the petitioner above named moves this court for a judgment reversing the determination of the respondents adjudging and decreeing that petitioner’s request for an upward adjustment of its 1981 base year costs is within the scope of Public Health Law § 2807-a (5) (g), and directing the respondent Commissioner to consider petitioner’s application and request pursuant thereto.
For the following reasons stated in this decision, the court denies petitioner’s motion.
Pursuant to Public Health Law article 28, the New York State Health Department is charged with responsibility for setting hospital reimbursement rates for Medicare, Medicaid, Blue Cross Corporation, and other payors. The method for determining these reimbursement rates is set forth in Public Health Law §§2807 and 2807-a. As part of this process, the Health Department must set an "in-patient revenue cap” for each hospital. The inpatient revenue cap is the maximum amount of inpatient revenue a hospital is authorized to receive for a specified 12-month period.
Pursuant to section 2807-a, the respondents are required to set inpatient revenue caps for the years 1983, 1984 and 1985. In reaching the inpatient revenue cap for a given year, allowable base year costs are increased by a trend factor to account for inflation between the base year and the rate year. The reimbursement rates and inpatient revenue cap for the years 1983, 1984 and 1985 are determined using each hospital’s 1981 base year cost data.
In addition to the trend factor, the Legislature has allowed for adjustments to either an established inpatient revenue cap or to the reported base year cost.
The record shows that on or about January 6, 1983, petitioner Community-General Hospital requested that respondents make an adjustment in the hospital’s reported base year cost. This application sought adjustments in its base year costs based upon two categories of increased expenses: (a) increased costs associated with multiyear commitment for increased wages and fringe benefits for petitioner’s nursing staff, commencing November of 1981, and (b) increased costs associated with additional nursing staff hired in late 1981 and early 1982.
The application seeking a modification based upon increased *638 wages and fringe benefits was granted by respondents and an appropriate upward adjustment was made to petitioner’s rates. However, the application based upon additions made to the nursing staff was denied.
Petitioner requested an administrative hearing in regard to the denial of the adjustment based upon the staff added between 1981 and early 1982, as provided in the regulations set forth in 10 NYCRR 86-1.17, which was denied because no question or issue of fact was presented, according to the review officer.
The letter of the rate review officer to petitioner explained that the issue presented on that appeal was merely a question of law concerning the statutory interpretation of Public Health Law § 2807-a (5) (g), for which no appeal is allowed.
In the case of Matter of Howard v Wyman (28 NY2d 434, 438 [1971]) the Court of Appeals stated that "[i]t is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld.” (See, State Div. of Human Rights v Xerox Corp., 102 AD2d 543, 548 [4th Dept 1984]; Matter of John P. v Whalen, 54 NY2d 89, 95 [1981].) The Howard court (supra, p 438) explained that the administrative determination is to be accepted by the courts " 'if it has "warrant in the record” and a reasonable basis in law’ ”. This court finds that the interpretation of the statute by the administrative agency in this case is not irrational or unreasonable and should be upheld. The court should not resort to judicial legislation. If there is a change to be made in the Commissioner’s construction of the statute it must be accomplished by legislative amendment.
Section 2807-a (5) (g) states the following: "The commissioner shall consider an adjustment to a hospital’s reported base year costs in instances where it is demonstrated that recurring costs resulting from multi-year commitments beginning late in a base year should be calculated on an annual basis in establishing a revenue cap in order to avoid a significant inequity. In making such an adjustment the commissioner shall consider the offset of non-recurring base year costs.”
This court must accept the definition of "multi-year commitments” as defined by the agency. According to an affidavit by Mr. Van Guysling, the insertion of subdivision (5) (g) of section 2807-a is intended to insure that hospitals which enter into a *639 multiyear wage/fringe benefit commitment to provide increased compensation for its employees would have its reimbursement rates and inpatient revenue cap adjusted to reflect such commitments.
Although the court does not look for legislative intent in Mr. Van Guysling’s affidavit, it does give the court some idea of how that department interprets the phrase "multi-year commitment”.
An examination of the regulations concerning residential health care facility rates contained in 10 NYCRR 86-2.14, as well as the health facility’s memorandum attached as exhibit "A” to Mr. Van Guysling’s affidavit, reveals the phrase "multi-year commitment” has been used within the rate-setting context, together with the phrase "multi-year agreements”, to refer exclusively to contractual agreements or commitments regarding labor costs for health care providers. (See, 10 NYCRR 86-2.14 [g].)
This court concludes that the respondents’ determination rejecting the adjustment requested based upon increased staff was made as a result of the agency’s interpretation of the phrase "multi-year commitment” used in Public Health Law § 2807-a (5) (g). The Health Department is the agency bound to administer Public Health Law article 28 and its interpretation of this provision is not irrational or unreasonable, and it is, in fact, consistent with prior usage.
This court also notes that the general legislative purpose and desire to control health care costs is consistent with the respondent’s interpretation.