In the Matter of WESTINGHOUSE ELECTRIC CORP. et al., Petitioners, v STATE DIVISION OF HUMAN RIGHTS et al., Respondents.

Third Department, July 13, 1978

## APPEARANCES OF COUNSEL

*James L. Burke* for petitioners.

*Ann Thacher Anderson (Harry Starr* of counsel), for respondents.

## OPINION OF THE COURT

MAIN, J.

Complainant, an 18-year-old high school student, is the son of parents both of whom work for the Westinghouse Electric Corporation (hereinafter Westinghouse). As such, he was entitled to and did apply for summer employment as a general laborer in a special program of employment offered to the dependent children of Westinghouse employees. All applicants for the program were required to submit to pre-employment physical examinations. All now concede that at the time of his physical examination and at various times previous thereto complainant was afflicted with a rash (dermatitis) located primarily in the femoral or intertriginous region and secondarily on parts of his body and limbs.* Complainant was also found to be obese and also had difficulty in the manipulation of the first metacarsal phalangeal joint. Complainant was rejected for employment because the examining doctor opined that exposure to the chemical elements present in the plant would so exacerbate the dermatitis as to render complainant unable to perform his duties. Immediately upon rejection, the complainant filed a complaint with the Division of Human Rights asserting that Westinghouse and its personnel director had unlawfully discriminated against him (Executive Law, § 296). After a finding of probable cause and a subsequent hearing, the State Division of Human Rights determined that Westinghouse and its personnel director had refused to employ the complainant because of his disability (dermatitis) in contravention of section 296 of the Executive Law and this determination was upheld by the State Human Rights Appeal Board. Hence, petitioners were fined an amount of money equal to the sum the complainant would have earned if he had not been rejected from employment for the summer period in 1976 and other sanctions were imposed and this proceeding ensued.

It is clear, of course, that it is an unlawful discrimina-

---

* At the time of his physical examination complainant certified that he had had no previous skin disease.

tory practice for an employer, because of a disability of any individual, to refuse to employ or to discharge such individual or to discriminate against him in compensation or in the terms, conditions or privileges of employment (Executive Law, § 296; *Matter of State Div. of Human Rights v Averill Park Cent. School Dist.,* 59 AD2d 449). In defining "disability" subdivision 21 of section 292 of the Executive Law reads: "means a physical, mental or medical impairment resulting from anatomical, physiological or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to physical, mental or medical conditions *which are unrelated* to the ability to engage in the activities involved in the job or occupation which a person claiming protection of this article shall be seeking." (Emphasis added.)

The board's determination is apparently based upon the fact that the complainant at the time of his physical examination was not prevented by the condition found (dermatitis) from exercising his normal body functions and there is little question but that complainant, initially at least, could have physically performed the activities involved. However, the record establishes by clear, convincing and uncontradicted medical evidence that the complainant was suffering from dermatitis which would be exacerbated by direct or indirect exposure to the chemicals known to be present in the Westinghouse plant. Significantly, the examining physician was keenly aware of the variety of chemicals to be found and generally aware of the nature of the duties and assignments given one in the program. The doctor testified that, while some medications would alleviate the condition under normal circumstances, continued exposure to these chemicals would overcome the effects of the medication and cause the rash to spread and no doubt ultimately render the complainant incapable of satisfactorily performing the physical requirements of the job. In addition, the doctor opined that to have permitted this young man, in his condition, to work in the plant with the exposure to chemicals would have been a negligent act.

▮ Thus, it seems obvious that the disability was *related* to complainant's "ability to engage in the activities involved in the job". To hold, as the board apparently does, that the mere fact that the complainant could physically perform the job

duties at the time of his physical examination means that the disability is *unrelated* to his ability to engage in the activities involved is contrary to the clear intent of the statute and the law of reason. The disastrous results of such a holding to both employer and employee are frightening indeed. In *Averill Park (supra),* we called for the exercise of common sense and pointed out that the board exceeded its authority and that the board should restrict its intervention to cases in which the alleged disability is unrelated to the nature of the employment. We are constrained to observe that continued unreasonable intervention in cases of this nature cannot but impede or destroy progress in this vital area.

The petition should be granted and the determination annulled, with costs.

GREENBLOTT, J. P., STALEY, JR., MIKOLL and HERLIHY, JJ., concur.

Petition granted, and determination annulled, with costs.