*215 OPINION OF THE COURT
Chief Judge Wachtler.
The respondent, Xerox Corporation, refused to hire the complainant, Catherine McDermott, because she was obese. In administrative proceedings under the Human Rights Law (Executive Law art 15), McDermott’s complaint that Xerox unlawfully discriminated against her because of a disability was sustained by the Commissioner of Human Rights but was rejected by the Human Rights Appeal Board. On judicial review, the Appellate Division reinstated the Commissioner’s determination and Xerox appeals. The question is whether the complainant’s obesity constitutes a disability within the meaning of the Human Rights Law (Executive Law § 292 [21]).
In 1974 complainant, a computer programmer, applied for a job with Xerox. On August 8 the company offered her a position as a systems consultant, provided she passed a preemployment medical examination. On August 14 she accepted the offer. The physical examination took place on August 26. The examining physician found that complainant was 5 feet 6 inches and weighed 249 pounds. On the portion of the form labeled “Notes — Describe every abnormality in detail,” the doctor stated that complainant was “obese”. No other remarkable clinical or laboratory findings were indicated. On the basis of her weight alone, the examining physician concluded that complainant was medically “not acceptable”.
This report was reviewed by Dr. Wright, the company’s Director of Health Services, who concurred in the recommendation. On September 3, 1974, the company sent complainant a letter informing her that she had not passed the physical and thus would not be hired by Xerox. She was later informed that she had failed the exam solely because of her obesity.
On August 13, 1975, McDermott filed a complaint with the State Division of Human Rights charging Xerox with a discriminatory employment practice. She relied on a recent amendment to the Human Rights Law which, effective September 1, 1974, prohibited employers from refusing to employ persons with disabilities (Executive Law § 296 [1] [a], L 1974, ch 988, § 2). At that time the statute provided that the “term ‘disability’ means a physical, mental or medical impairment resulting from anatomical, physiological or neurological conditions with prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to physical, mental *216 or medical conditions which are unrelated to the ability to engage in the activities involved in the job or occupation which a person claiming protection of this article shall be seeking.” (Executive Law § 292 [20] [now 21].)[1]
At the hearing on the complaint, McDermott testified that Dr. Wright informed her that the job offer was withdrawn because she had the “disease” of “active gross obesity”. She testified that she had always been overweight, but that it had not prevented her from performing any task or function. It had not interfered with her ability to raise five children under 10 years of age after her husband died. Neither did it prevent her from working outside of the home at jobs similar to the one originally offered by Xerox. In fact, she stated her weight had not inhibited her in any way, except in carrying bundles for long distances.
Dr. Wright testified that he had not examined complainant but had instructed physicians conducting preemployment physicals to use height and weight tables published in 1966 by an insurance company to ascertain acceptable weight ranges for job applicants. Complainant exceeded the scheduled weight range for her height by approximately 100 pounds. Upon receipt of the examining physician’s report, Dr. Wright entered a diagnosis of “gross obesity”. On the basis of that condition alone, he determined that complainant should not be hired because, in his opinion, gross obesity posed a significant risk to short and long term disability and life insurance programs administered by respondent.
The Commissioner sustained the complaint. He found that “complainant’s obesity, clinically observed as an abnormality during the course of a pre-employment physical examination administered on August 26, 1974, constituted a physical or medical impairment demonstrable by medically accepted clinical diagnostic techniques.” He also noted that the company had submitted no evidence that persons with this condition were unable to perform the job of a systems consultant satisfactorily. He found that complainant had held comparable positions before she applied to Xerox and afterwards. Although her weight remained essentially constant throughout that period, she had performed the jobs “in a satisfactory manner, without apparent *217 difficulty or significant periods of absence due to illness.” He rejected as a “semantic equivocation” the company’s position that complainant’s ability to perform satisfactorily demonstrated that she was free of any impairment, noting that the respondent’s own medical examiner “clinically observed an abnormal medical condition” which resulted in her “summary disqualification”. The Commissioner concluded that the company had discriminated against complainant on the basis of a disability unrelated to her employment in violation of the Human Rights Law. He ordered the company to offer her a position of systems consultant, or equivalent title, with back pay, and directed other remedial measures.
The Human Rights Appeal Board reversed and dismissed the complaint. The Board held that “being overweight without proof of any impairment” is not a disability covered by the statute. It also observed that since there was no evidence that complainant suffered from any other disorder “[h]er overweight can only be attributed to a voluntarily induced condition unrelated to any glandular or organic deficiency.” The Board concluded: “although Xerox’s policy may appear to be discriminatory to overweight individuals it does not constitute unlawful discrimination under the Human Rights Law.”
In this proceeding commenced pursuant to Executive Law § 298, the Appellate Division reversed the Board and reinstated the Commissioner’s determination. The court noted that the Board’s scope of review was limited to the standard applicable to judicial review of administrative determinations (State Off. of Drug Abuse Servs. v State Human Rights Appeal Bd., 48 NY2d 276, 283). It found that there was substantial evidence to support the Commissioner’s determination that complainant suffered a disability, and that the Commissioner’s conclusion that obesity itself can constitute an impairment was a reasonable, commonsense interpretation of the statute. The court observed that no reason was offered as to why the statute should be construed in such a way as to afford no protection to a person like complainant who suffers from obesity “but has no other demonstrable impairment”, while “a person with the same degree of obesity accompanied by high blood pressure or diabetes” could not be denied employment under the statute if those conditions, like complainant’s, were unrelated to job performance (102 AD2d 543, 549).
Xerox urges that it did not deny complainant employment because of a present impairment but because of a statistical likelihood that her obese condition would produce impairments *218 in the future. It urges that persons with such conditions are not disabled within the meaning of the statute and can be refused employment because of the adverse impact their employment may have on disability and life insurance programs.
Initially we note that if a person suffers an impairment, employment may not be denied because of any actual or perceived undesirable effect the person’s employment may have on disability or life insurance programs. Under the statute in effect at the time this case arose, employment could only be refused if the condition was related to the performance of the duties of the position (Matter of State Div. of Human Rights v Averill Park Cent. School Dist., 59 AD2d 449, affd 46 NY2d 950; State Div. of Human Rights [Ghee] v County of Monroe, 48 NY2d 727; Matter of Westinghouse Elec. Corp. v State Div. of Human Rights, 49 NY2d 234).[2] Since the Commissioner found, and it is not disputed, that there is no relationship between complainant’s condition and her ability to perform the job she seeks, the company could not refuse to hire her because of the collateral effect her impairment, if it be that, might have on existing disability and life insurance programs.
The only question then is whether the complainant suffered an impairment within the meaning of the statute. Although the Commissioner found that she did, the company urges that the determination is not supported by substantial evidence because there is no evidence that her condition presently places any restrictions on her physical or mental abilities. It urges that the Commissioner misinterpreted the statute in holding that her condition of obesity itself constitutes an impairment. These arguments might have some force under typical disability or handicap statutes narrowly defining the terms in the ordinary sense to include only physical or mental conditions which limit the ability to perform certain activities (see, e.g., 29 USC § 706 [6] [now 7], defining a “handicapped individual” as a person who “has a physical or mental impairment which substantially limits one or more of such person’s major life activities”). However in New York, the term “disability” is more broadly defined. The statute provides that disabilities are not limited to physical or *219 mental impairments, but may also include “medical” impairments. In addition, to qualify as a disability, the condition may manifest itself in one of two ways: (1) by preventing the exercise of a normal bodily function or (2) by being “demonstrable by medically accepted clinical or laboratory diagnostic techniques” (Executive Law § 292 [20] [now 21]).
Fairly read, the statute covers a range of conditions varying in degree from those involving the loss of a bodily function to those which are merely diagnosable medical anomalies which impair bodily integrity and thus may lead to more serious conditions in the future. Disabilities, particularly those resulting from disease, often develop gradually and, under the statutory definition, an employer cannot deny employment simply because the condition has been detected before it has actually begun to produce deleterious effects. Thus, the Commissioner could find that the complainant’s obese condition itself, which was clinically diagnosed and found to render her medically unsuitable by the respondent’s own physician, constituted an impairment and therefore a disability within the contemplation of the statute.[3]
The respondent also urges that, as a matter of policy, the statutes should only apply to immutable disabilities and not to those which are correctable. The argument is based on the fact that complainant does not appear to suffer from any other disorder causally related to overweight. This led respondent’s physician to conclude at the hearing that her condition was probably due to bad dietary habits. However, the Commissioner expressly rejected that opinion as speculative under the circumstances. In any event, the statute protects all persons with disabilities and not just those with hopeless conditions.[4] Because the complainant is claiming the benefit of a statutory right, any policy decision limiting that right must come from the Legisla *220 ture and not from the courts. We have found nothing in the statute or its legislative history indicating a legislative intent to permit employers to refuse to hire persons who are able to do the job simply because they have a possibly treatable condition of excessive weight.
Accordingly, the order of the Appellate Division should be affirmed.

. The statute has since been amended to provide broader protection by requiring the employer to go further and show that the condition prevents the employee or prospective employee from performing in a reasonable manner (L 1979, ch 594, eff July 10,1979; see, Matter of Miller v Ravitch, 60 NY2d 527). This amendment, however, is not retroactive and thus, the case now before us is governed by the statute in effect in 1974 when the complainant was refused employment (Matter of Westinghouse Elec. Corp. v State Div. of Human Rights, 49 NY2d 234, 237).

. In view of the fact that the Commissioner found complainant’s condition constituted an actual impairment, there is no need to consider the effect of the 1983 amendment to Executive Law § 292 (21), which expanded the definition of disability to include conditions which are “regarded by others as such an impairment” (L 1983, ch 902, § 1, eff Aug. 8, 1983).

. The “internal guidelines” relied upon by the dissenter are not relevant. They are nothing more than suggested approaches mentioned in a letter memorandum when the disability provision was first added to the Human Rights Law. They were not incorporated in binding regulations. Neither were they intended to express a fixed policy of the Executive Department since the letter expressly designates them as “tentative principles”. At the time the hearing was held in this case the Commissioner’s experience administering the law had prompted him to abandon these “tentative” guidelines, which he was free to do.