In the Matter of STATE DIVISION OF HUMAN RIGHTS, on Complaint of PETER GRANELLE.

CITY OF NEW YORK et al., Petitioners, v STATE DIVISION OF HUMAN RIGHTS, on Complaint of PETER GRANELLE, Respondent.

First Department, June 17, 1986

## APPEARANCES OF COUNSEL

*Edward F. X. Hart* of counsel *(Leonard Koerner* and *Patricia A. O'Malley* with him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for petitioners.

*Anton Antomattei* of counsel *(Margarita Rosa,* attorney), for respondent.

## OPINION OF THE COURT

ROSENBERGER, J.

This appeal involves an apparent conflict between Civil Service Law § 50 (4) (b) and two provisions of the Executive Law (Human Rights Law) § 292 (21) and § 296 (1), as to whether a statistical probability of future disability may be considered in determining qualification for employment as a police officer. Complainant Peter Granelle was a candidate for appointment to the New York City Police Department. In June 1979, complainant passed the written portion of competitive Civil Service Examination No. 8155 with a score of 99%. On October 4, 1979, Granelle passed the "agility test". Later that same day, he submitted to a required preappointment medical examination. X rays taken during the examination

revealed that complainant had a back abnormality, a spinal disorder known as prespondylolisthesis, and a widening of the lumbo-sacral angle. This is a disqualifying defect pursuant to item number 42 of the "Medical Standards and Regulations for Patrolmen and Policewomen for Examination No. 8155."

After exhausting his other administrative remedies, Granelle appealed the Department of Personnel's final determination of disqualification dated January 7, 1980, to the Civil Service Commission of the City of New York (CSC). On June 3, 1980 the CSC denied his appeal. In the interim complainant filed a complaint with the respondent New York State Division of Human Rights (Division) alleging that petitioners unlawfully discriminated against him because of a disability. The CSC was later added as a party to the proceeding. It is the Division's order in complainant's favor that froms the basis for the instant proceeding pursuant to Executive Law § 298.

The Division conducted an investigation, made a finding of probable cause, and held a six-day hearing before an Administrative Law Judge which spanned the period August 1982 to January 1984. Complainant testified at the hearing that during his prior 10 years' employment as a mason, truck driver, and cesspool installer, he had consulted a chiropractor for treatment of pulled back muscles on one occasion in 1976 or 1977. Granelle introduced into evidence a letter form his personal physician, Dr. Victor Gold, stating that complainant has a unilateral spondylosis, most likely a finding of a congenital condition which is present in approximately 10 to 11% of the normal population. Dr. Gold opined: "I feel that in view of his excellent history, with no problems referable to his back, he would have no difficulty in performing the duties required of a New York City Police Officer."

By stipulation of the parties, a neutral physician, Dr. Stanley Liebowitz, an orthopedist, examined Granelle to "determine whether he was physically fit to perform police duty." His report was introduced into evidence as a joint exhibit. Both Dr. Liebowitz' report, and the testimony of another orthopedist, Dr. Schein, established that complainant had bilateral spondylolisthesis, the forward slippage of one vertebra over another due to a structural defect in the neural arch, at the fifth lumbar vertebra, and a widening of the intervertebral disc between the fifth lumbar vertebra and the first sacral vertebra. Both physicians concluded there was a statistically higher than normal probability that the sudden move-

ments involved in police service, i.e., physical combat, the apprehension of criminals, lifting and carrying aided individuals, and driving over city streets for many years, would aggravate complainant's presently asymptomatic disability. Dr. Liebowitz' report indicated: "Straight leg raising test is negative. Strength of his extremities is normal. His back mobility is also normal * * * I believe that the abnormal x-ray findings indicate a tendency for the body of L-5 to be pushed forward and ultimately result in pain and disability referable [sic] to the back and legs * * * this is not a specific predication for this patient, but rather is in this case a statistically higher probability of symptoms developing compared to a similar person with normal back x-rays."

Dr. Schein testified, on the basis of his review of Dr. Liebowitz' report, medical reports, and X rays, that there was a "great likelihood" that clinical manifestations of low back disability would arise from the defect within 10 to 20 years after the commencement of employment, that the disc can degenerate spontaneously or gradually due to slippage or due to sudden strenuous effort, causing a herniated disc, pain, and disability in the back and along one or both of the legs, and that firm statistics regarding asymptomatic spondylolisthesis are unavailable, since individuals with the defect are generally discovered because they experience pain. He cited a recent Israeli study which found a definite connection between the defect and low back disability. Dr. Schein further noted that Dr. Wiltse, an orthopedic specialist, has stated there is a 25% likelihood low back disability will develop from the defect, without reference to the afflicted individual's activities.

In her notice of recommended findings of fact, decision and order, the Administrative Law Judge (ALJ) found that petitioners discriminated against complainant by disqualifying him on the basis of a disability which did not prevent him from performing in a reasonable manner the activities of the position sought. The ALJ determined there was "no evidence complainant's condition was an impediment to his performing those [police] duties in a 'reasonable manner' " and "for an indefinite period of time and in a safe manner". She ruled that petitioners had failed "to establish by convincing evidence a relationship between complainant's condition and his ability to engage, in a reasonable manner, in the activities of a police officer at the time of his disqualification or thereafter." The ALJ also rejected petitioners' reliance on Civil Service Law § 50 (4) (b), stating that discretion thereunder is

circumscribed by the Executive Law. By notice of order after hearing and order dated January 29, 1983, the Commissioner of the Division adopted the ALJ's findings and recommendations.

In our view, the Division either misapprehended the interrelationship between the governing statutory provisions, or the applicable burden of proof. We hold that Civil Service Law § 50 (4) (b) is a valid, nondiscriminatory ground for denying municipal employment. We interpret an inability to perform under Human Rights Law § 292 (21) to include a reasonable expectation, based upon statistical evidence, that a condition would result in future disability.

Human Rights Law § 296 prohibits discrimination against an individual based upon a disability. A "disability" is a medical impairment "which [does] not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought". (Human Rights Law § 292 [21].) Civil Service Law § 50 (4) (b) provides that an applicant, whose medical condition "may reasonably be expected to render him unfit to continue to perform the duties of [the] position", may be disqualified for appointment. Special Term, New York County, recently rejected a police officer's challenge under section 296 (1) to disqualification based upon his prior back problems and an asymptomatic, osteoarthritic back condition. (Hansen v New York City Civ. Serv. Commn., Sup Ct, NY County, 1985, Index No. 2053/84.) The court there held the reasonable expectancy of fitness standard under section 50 (4) (b) bears a rational relationship to job performance, and does not create an impermissible discriminatory barrier to employment. (But see, City of New Rochelle v New York State Div. of Human Rights, 111 AD2d 738 [2d Dept 1985].)

In another case akin to the present one, City of New York, Envtl. Protection Agency v Feinberg (67 AD2d 653 [1st Dept 1979], affd 48 NY2d 1017 [1980]), this court dismissed a discrimination complaint, without prejudice to a medical reexamination and reevaluation, indicating that the New York City Sanitation Department may properly disqualify an applicant for the position of "Laborer" based upon an asymptomatic, osteoarthritic, degenerative back condition. The court indicated (at p 654): "It seems reasonable that a qualifying physical examination would take into consideration the effect of an existing degenerative disease and the possibility of its rendering the applicant unable to perform his duties. 'The

public's interests are sufficiently involved to permit consideration of the element of prognosis within reasonable limitations on the question of fitness.' "

In the context of municipal employment, *Matter of Palozzolo v Nadel* (83 AD2d 539 [1st Dept 1981], *affd* 55 NY2d 984 [1982]) recognized the right reserved to the New York City Fire Department to deny permanent appointment to an applicant with a curvature of the spine. The medical evidence was conflicting as to whether the condition was cause for disqualification. This court declined to choose between medical opinions, and held that given the nature of a fire fighter's duties and the impairment, the conclusion that the condition would affect his performance and increase the likelihood of eventual disability had a rational basis.

We are convinced that the 1979 amendment to section 292 (21), as interpreted by *State Div. of Human Rights v Xerox Corp.* (65 NY2d 213 [1985]), neither overturned the aforementioned case authority, nor the prior provisions of the Civil Service Law which reserved the right of a municipal employer to consider a prognosis within reasonable limitations. The 1979 amendment to section 292 (21) expanded the definition of impermissible discrimination from that based upon non-job-related impairments to include impairments which do not actually prevent an individual from performing his duties in a reasonable manner. *(See, Matter of Westinghouse Elec. Corp. v State Div. of Human Rights,* 49 NY2d 234 [1980], *affg* 63 AD2d 170 [3d Dept 1978].)* In the *Xerox* case, the Court of Appeals rejected the contention that an applicant could be disqualified for a position as a computer programmer based upon a statistical likelihood that her obesity would produce future impairments having a collateral adverse effect upon disability and life-insurance programs. The language in the *Xerox* case (at p 219), referred to by the Division, does suggest that the risk of a present medical condition deteriorating into a disabling one is insufficient to deny employment. This language, however, is dictum, and must be narrowly confined to the facts and circumstances of that case.

The present case involves substantially different issues and policy considerations. Significantly, the Xerox Corporation predicated the applicant's disqualification upon the collateral adverse effect her obesity was likely to have upon its disability and insurance programs, rather than alleged direct, actual interference with her job performance. Also absent in *Xerox (supra)* were any likelihood that job duties would precipitate

the unmanifested condition and considerations of safety for fellow employees and the public. *(See, Matter of Strauss v Hannig,* 256 App Div 662 [1st Dept 1939].)

Pertinent legislative history and principles of statutory construction reinforce our conclusion. The Legislature amended section 292 (21) to remedy case authority which narrowly interpreted the term "disability". (L 1979, ch 594, § 1.) It also amended Civil Service Law § 50 (9), to require the determination of disability by a CSC medical director, and repealed section 50 (4) (c) concerning substance abuse by an applicant. (L 1981, ch 980 §§ 1, 2.) Had the Legislature desired to repeal prior case law or amend section 50 (4) (b), it would have done so.

We believe the Division erred in assuming that section 296 (1) circumscribes petitioners' discretion to assess the future impact of a disability under section 50 (4) (b). Since these statutes deal with employment qualification and disability, they are in pari materia, and should be applied harmoniously. *(Rector of St. Bartholomew's Church v Committee to Preserve St. Bartholomew's Church,* 84 AD2d 309, 313 [1st Dept 1982].) Repeal by implication is highly disfavored *(Cimo v State of New York,* 306 NY 143, 148 [1953]), and it is unnecessary for us to consider the issue where, as here, the statutes are not clearly repugnant. A fair and reasonable interpretation of the Human Rights Law complements the Civil Service Law by recognizing petitioners' right to consider the risk of future disability.

In the present case, petitioners properly predicated complainant's disqualification upon a statistical probability that he would become unfit for police service in the future. It seems reasonable to permit the Police Department to consider that the duties performed by a police officer, including the lifting and carrying of aided individuals, apprehending and subduing suspected criminals, engaging in physical combat, and driving over city streets for many years, threaten to precipitate complainant's spondylolisthesis, rendering him disabled and possibly endangering fellow officers, as well as the people whom police officers protect and serve.

We cannot say that substantial evidence supports a finding of discrimination based on disability. Assuming, arguendo, that the Division only considered the sufficiency of the statistical evidence, rather than interpreting the Human Rights Law to preclude consideration of future disability, it erred in this

respect as well. Respondent patently overlooked the uncontroverted medical evidence that police duties were likely to aggravate complainant's back condition rendering him unfit to continue his duties. The Division concomitantly gave undue and unwarranted weight to the prognosis set forth in the letter from complainant's personal physician. This letter was conclusory, and markedly failed to substantiate or otherwise relate the prognosis to the specific duties of the position.

Moreover, respondent misapprehended petitioners' burden as one of demonstrating by "convincing evidence" a connection between the defect and disability of issue. Assuming, arguendo, complainant made out a prima facie case of discrimination, petitioners met their burden of coming forward with evidence to justify the denial of employment. *(Compare, City of New York v Donnaruma,* 70 AD2d 856 [1st 1979], insufficient evidence to show inability to meet job requirements due to a degenerative condition.) The burden of persuasion never shifted to petitioners. *(Kelly v Town of N. Hempstead,* 103 AD2d 767 [2d Dept 1984].) The statistical evidence of future impairment due to spondylolisthesis here was sufficient to establish both an inability to perform under section 292 (21) and a reasonable expectation of unfitness under section 50 (4) (b). A higher standard of certainty or definitiveness in medical judgment would create an insurmountable, practical barrier, and eviscerate section 50 (4) (b).

Consequently, the petition should be granted and the order of the State Division of Human Rights, dated January 29, 1985, which, to the extent sought to be reviewed, *inter alia,* found petitioners the City of New York, the New York City Police Department, the New York City Department of Personnel, and the Civil Service Commission of the City of New York guilty of discrimination on the basis of disability, directed petitioners to restore the complainant to eligibility for appointment as a police officer; to cease and desist from refusing to hire or employ or otherwise discriminate against any employee or applicant because of a disability which does not prevent him from performing in a reasonable manner the activities of the position sought; and, to send a memorandum to all supervisory employees, officers, and hiring personnel instructing them to implement such a policy of nondiscrimination based upon disability, should be annulled, on the law, and the complaint dismissed, without costs.

ELLERIN, J. (dissenting). The question presented in this

proceeding is whether the municipal petitioners may deny employment to a prospective police officer on the authority of Civil Service Law § 50 (4) (b) in the face of an order by the Commissioner of Human Rights, after a hearing, finding that the candidate can presently, and for an indefinite period of time, perform in a reasonable manner the duties of a police officer.

The Human Rights Law (Executive Law art 15) prohibits an employer from refusing to hire a person on the basis of discrimination because of disability (Executive Law § 296). For the purposes of employment discrimination within this statute, "disability" is defined as a medical impairment "which [does] not prevent the claimant from performing in a reasonable manner the activities involved in the job or occupation sought or held". (Executive Law § 292 [21].)

The report of Dr. Gold indicated that Granelle's spondylosis condition is a congenital finding present in approximately 10% to 11% of the normal population. He opined that in view of Granelle's excellent previous history, with no problems referable to his back, he would have no difficulty performing the duties of a New York City Police Officer.

Dr. Liebowitz, the neutral expert accepted by both parties, reported after his examination of the complainant that the strength of his extremities is normal and back mobility is also normal. While Dr. Liebowitz stated that the physical activities included in police functions may tend to aggravate the condition and that the forward slippage of one vertebra may tend to ultimately result in pain and disability in the back and legs, his report stated this was not a specific prediction for Granelle but rather a mere statistical possibility compared to a person with normal back X rays.

However, complainant testified concretely as to his prior employment history and excellent physical condition. He had continually worked for the previous 10 years, performing heavy labor such as masonry, digging ditches, and installing cesspools without ever having lost time from work because of his back problems. He has served as a volunteer fireman. Complainant also drove heavy duty flatbed trucks over rough terrain without incident, a fact particularly noteworthy in light of the city's assertion that riding in a police car over city streets would aggravate his back condition to the point of disabling injury.

Also significant in this regard is the fact that Granelle

passed the physical agility test administered by the Police Department, a factor which the city's expert admits is an indication that Granelle can presently perform the job.

Having shown that his disability did not prevent him from performing the activities of a police officer in a reasonable manner, Granelle made out a prima facie case of discrimination in the city's refusal to hire him because of his disability.

To rebut the evidence of discrimination, the petitioners offered the testimony of its expert physician, Dr. Schein. Dr. Schein did not personally examine Granelle but instead testified on the basis of prior medical reports. Dr. Schein theorized that there was a 25% likelihood of the development of low back disability from Granelle's defect. Alternatively basing another opinion on the "Israeli Study", Dr. Schein testified that there is a definite connection between spondylosis and later development of low back disability. While he noted that there are no firm statistics available, he offered an opinion that there was a "25-50% chance" that Granelle would become disabled within 10 or 20 years of his employment. But Dr. Schein unequivocally testified that Granelle was "able to do the job now".

The city relies on Civil Service Law § 50 (4) (b) which permits a municipal department to disqualify from employment an eligible applicant who is found to have a physical or mental disability which may reasonably be expected to render him unfit to continue to perform the duties of such position. The city contends that Dr. Schein's speculative prognosis constitutes a reasonable expectation that Granelle would be unfit to continue to perform a police officer's duties. The city then advances the view that its reliance on the Civil Service Law provides a valid, nondiscriminatory ground for disqualification from public employment.

I believe, as the majority does, that this provision of the Civil Service Law must be reconciled with the employment discrimination statutes of the Human Rights Law. However, in harmonizing these two statutes, the Civil Service Law cannot be construed in a manner which totally eviscerates the plain meaning and intent of the discrimination statute. When the Legislature amended Executive Law § 292 (21) and defined "disability" as a condition which does not prevent a claimant from performing in a reasonable manner the activities involved in the job, it clearly intended to encompass a situation such as exists here where a person is refused employment

solely because of a disability which has no relation to his ability to perform the job.

The cases interpreting this statute clearly support this conclusion. In *Matter of Miller v Ravitch* (60 NY2d 527), wherein the MTA argued that the employee's heart condition may relate to his ability to perform the duties of an assistant station manager, the court held (at p 532): "Under the current statute, then, it is not enough for the employer to show that the employee's physical impairment is somehow related to the duties he must perform in the position sought. Nor is it sufficient to show that the impairment precludes the employee from performing the duties in a perfect manner. The statute bars discrimination against an impaired individual who is reasonably able to do what the position requires. Unless it is shown that the employee's physical condition precludes him from performing to that extent, the disability is irrelevant to the job and can form no basis for denying him the position."

Here, the city contends not that Granelle cannot perform the job fully but that there is a statistical probability that a person with his condition may develop a disability in the future. The Court of Appeals addressed these concerns in *State Div. of Human Rights v Xerox Corp.* (65 NY2d 213, 217-218), where the employer denied complainant employment not because of a present impairment but "because of a statistical likelihood [that the] condition would produce impairments in the future." The court held (p 219) that: "Fairly read, the statute covers a range of conditions varying in degree from those involving the loss of a bodily function to those which are merely diagnosable medical anomalies which impair bodily integrity and thus may lead to more serious conditions in the future. Disabilities, particularly those resulting from disease, often develop gradually and, under the statutory definition, an employer cannot deny employment simply because the condition has been detected before it has actually begun to produce deleterious effects."

The city's reliance on the alleged statistical likelihood of future impairment in Granelle's case is especially troubling since it gives no consideration to the pertinent realities of complainant's excellent current physical condition or a reasonably related inquiry as to complainant's prognosis on an individual basis *(see, Matter of Palozzolo v Nadel,* 83 AD2d 539 [Kupferman, J., dissenting]). The Civil Service Law allows the city to disqualify an applicant with a disability which may reasonably be expected to render him unfit to continue to

perform the duties. A reasonable expectation may not, however, be based on the speculative and theoretical nature of the predictions of Dr. Schein's testimony. A mere possibility that an applicant may be impeded in performance of the job because of a handicap that in theory may affect the ability to perform the job but in reality does not do so, is a discriminatory basis to reject the applicant *(State Div. of Human Rights v Le Roy Cent. School Dist.,* 107 AD2d 153).

Moreover, the Civil Service Law does not require the municipality to reject an applicant because of a reasonable expectation of inability to continue to perform but only allows it to do so. It is to be expected that the city would exercise this discretion in a reasonable and lawful manner, in this case as limited by the Human Rights Law and the facts as admitted by their own expert witness, that Granelle could presently perform the duties of a police officer, and continue to do so for a lengthy period of time, notwithstanding the possibility that 10 or 20 years in the future he may develop a disabling condition.

In this case, the city, relying solely on the expert's testimony of possible future impairment, cannot be said to have established reasonable grounds to disqualify Granelle, in the face of the substantial evidence in the record to support the Commissioner's determination that complainant could perform a police officer's duties in a reasonable manner and that his disqualification from employment violated the Human Rights Law. *(Cf. Matter of Carrero v New York City Hous. Auth.,* 116 AD2d 141; *City of New Rochelle v New York State Div. of Human Rights,* 111 AD2d 738.)

Accordingly, I would confirm the determination.

SULLIVAN and ROSS, JJ., concur with ROSENBERGER, J.; KUPFERMAN, J. P., and ELLERIN, J., dissent in an opinion by ELLERIN, J.

Determination and order of respondent dated January 29, 1985, annulled, on the law, and the complaint dismissed, without costs and without disbursements.