**Leland FAGAN, Plaintiff,**

v.

**UNITED INTERNATIONAL INSURANCE CO., Defendant.**

**United International Insurance Co., Counter–Claimant**

v.

**Leland Fagan, Counter–Defendant.**

**No. 99 Civ. 9373(CBM).**

United States District Court, S.D. New York.

Jan. 22, 2001.

infliction of emotional distress; and defamation.

Dina Maslow, the Law Firm of Louis Ginsberg, P.C., New York, NY, for Plaintiff Fagan.

Richard Steer, Jones Hirsch Connors & Bull P.C., New York, NY, for Defendant United International.

## MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT

MOTLEY, District Judge.

Defendant has moved for a grant of summary judgment against plaintiff. Plaintiff brought this suit pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), § 296 et seq. of New York State's Executive Law and §§ 8–101 et seq. of the New York City Administrative Code, alleging that plaintiff failed to reasonably accommodate plaintiff's disability, and fired plaintiff due to his disability. Defendant is counterclaiming for damages resulting from the crash of a company car driven by plaintiff and plaintiff's subsequent failure to repair and maintain the car in violation of company policy.

Because plaintiff cannot establish that he has a disability as defined by the ADA, this court hereby GRANTS summary judgment to defendant on the ADA claims. As plaintiff's federal claim has been dismissed, this court declines to exercise ancillary jurisdiction over the remaining local and state-law claims and counterclaims.

### I. Background

Plaintiff Fagan was hired by defendant in February 1997 as an insurance investigator. Two weeks after Fagan was hired, he was involved in a car accident while working for defendant which severely in-

jured both of his knees.[1] Fagan continued to work for defendant, primarily out of his home, for a period of time after the accident without requesting any accommodation for his injuries. In November of 1997 Fagan asked for, and received, two weeks off work in order to have surgery on his left knee. Fagan returned to work with a doctor's note which placed no restrictions on plaintiff.

Fagan continued to work after the two-week recuperation period without requesting any further accommodations until June 2, 1998, when he was scheduled to have a second surgery, this time on his right knee. During the period between the two surgeries, defendant claims it received complaints from outside counsel that Fagan was not completing investigative assignments. Defendant notes that by May of 1998, many of Fagan's assignments had been left pending, and Fagan had produced no results on those cases in spite of defendant's urging.

After the June 2, 1998 surgery, defendant sent work to plaintiff's home. Defendant claims that Fagan did not ask for time off, but instead arranged to work from his home. Fagan claims in the complaint that he asked for, and defendant agreed to allow, time off to have and recuperate from the second surgery; defendant then "barraged" Fagan with work at his home, rather than allowing him to recuperate. However, in his deposition, Fagan admits that he never asked for any special accommodation in relation to the June 2 surgery, claiming that he was fired before he had the chance to ask for accommodation. Fagan did not complain to defendant or refuse to do the work sent to him at home; rather, he stated that he did the work at home within his ability, such as reviewing files.

Following his surgery, Fagan informed defendant that he would be able to "do a job" by late July 1998. Fagan provided no medical documentation to defendant as to his ability to perform the tasks associated with his job. On June 29, 1998, defendant fired Fagan, defendant claims, due to the fact that Fagan's job performance was poor. Fourteen months later, on September 1, 1999, Fagan filed this suit.

## II. Discussion

■ The standard for summary judgment is that "[u]ncertainty as to the true state of any material fact defeats the motion." *Gibson v. Am. Broad. Companies,* 892 F.2d 1128, 1132 (2d Cir.1989). The movant must demonstrate the absence of a genuine issue of material fact. If the movant carries this burden, it then shifts to the non-moving party to produce concrete evidence sufficient to establish a genuine unresolved issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988). The court then must view the facts in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994). The court neither weighs evidence nor resolves material factual issues, but only determines whether, after adequate discovery, any such issues remain unresolved because a reasonable fact finder could decide for either party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Gibson,* 892 F.2d at 1132. "However, neither 'conclusory statements, conjecture, [n]or speculation' suffice to defeat summary judgment." *Johnson v. Delphi Energy & Engine Man-*

**1.** Defendant noted in its Rule 56.1 statement that plaintiff had injured one of his knees shortly before he was hired in a different accident and that defendant allowed plaintiff to change his start date to accommodate a surgery for that injury. At a hearing held on December 6, 2000, both parties agreed that the only relevant injuries were those inflicted after plaintiff began work. Accordingly, this court restricts its inquiry to the injuries and surgeries discussed above.

*agement Systems,* 181 F.3d 82, 82, 1999 WL 357843 (2d Cir.1999).

## A. The Americans With Disabilities Act

Plaintiff bears the initial burden in an ADA case of establishing a prima facie case. Plaintiff must show that (1) he is an individual with a disability within the meaning of the ADA; (2) he is qualified for the position; and (3) he was discharged because of his disability. *See Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 383 (2d Cir.1996).

Because this court has determined that plaintiff cannot establish the first element of his prima facie case, we need not explore the other elements. Therefore, the court's inquiry will be confined to the standard required to prove a "disability" under the ADA. In order to show that he has a disability, plaintiff must demonstrate that he (1) has "a physical or mental impairment that substantially limits one or more of [his] major life activities;" (2) has "a record of such an impairment;" or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(2).

■ In determining whether an impairment is "substantially limiting", the court should "consider (1) the 'nature and severity of the impairment;' (2) the 'duration or expected duration of the impairment;' and (3) the 'permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.'" *Murray v. Sysco Corp.,* 1998 WL 160826 (N.D.N.Y.1998) (*citing* 29 C.F.R. § 1630.2(j)(1)). "The term 'substantially limits' means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3).

A "transitory impairment is not considered substantially limiting." *Murray,* 1998 WL 160826 at *8 (holding that a knee injury requiring surgery did not have the required duration or long-term impact to qualify as a disability under the terms of the ADA). *See also Colwell v. Suffolk County Police Dept.,* 158 F.3d 635, 646 (2d Cir.1998) ("[A] seven-month impairment of [plaintiff's] ability to work ... is of too short a duration and too vague an extent to be "substantially limiting." "); *Rodriguez v. DeBuono,* 44 F.Supp.2d 601, (S.D.N.Y.1999) ("Intermittent, episodic impairments are not disabilities, the standard example being a broken leg.... A temporary or non-chronic impairment, such as a broken hip, may not be considered a 'disability' for the purposes of the ADA"), *rev'd on other grounds,* 197 F.3d 611, 617 (2d Cir.1999); *Evans v. City of Dallas,* 861 F.2d 846, 852–53 (5th Cir.1988) (finding that knee injury requiring surgery was not a disability); *Heintzelman v. Runyon,* 120 F.3d 143 (8th Cir.1997) ("[Plaintiff]'s asserted inability to work while recovering from surgery is simply not evidence of a permanent impairment.").

■ Even if the court accepts Fagan's version of the facts, he cannot show (as required to prove his prima facie case) that he had more than a temporary inability to work after his surgeries. Fagan admits that he continued to perform his work after a brief recuperation period after the first surgery. Fagan does not deny that the doctor's note he gave to defendant upon his return to work put no restrictions on his work activities. At the time of his termination, Fagan was recuperating from a second surgery, and had informed defendant that he would be able to return to work in approximately a month. Indeed, Fagan admits in his deposition that he was working for another employer by July of 1998. Based on Fagan's own assertions as to the extent of the injury and his behavior after surgery, Fagan has produced no evi-

dence that he had anything more than a temporary ailment at the time of his employment.[2] Plaintiff's injury did not have the required duration or long-term impact to qualify as a disability under the terms of the ADA. Therefore, plaintiff cannot survive summary judgment on his ADA claim.

### B. Non–Federal Claims

■ Plaintiff also alleges disability discrimination under New York State and City Human Rights law. The standard under New York State and City Human Rights laws for proving a disability is broader than that of the ADA. *See Reeves v. Johnson Controls World Services, Inc.*, 140 F.3d 144, 155—56 (2d Cir.1998); *State Division of Human Rights v. Xerox Corp.*, 65 N.Y.2d 213, 491 N.Y.S.2d 106, 480 N.E.2d 695 (1985). In addition, defendant's counterclaim is a non-federal claim. Therefore, having dismissed plaintiff's federal causes of action, the Court declines to exercise supplemental jurisdiction over these non-federal claims. *See* 28 U.S.C. § 1367(c)(3).

### III. Conclusion

Defendant's motion for summary judgment is GRANTED as to the first cause of action in the complaint. The court declines to exercise supplemental jurisdiction over the disability claims listed as the sec-

2. Plaintiff did attempt to admit post-termination medical reports and evidence of a parking permit which might have reflected a more chronic disability. However,

> reports about which the defendant employer had absolutely no knowledge nor access prior to terminating the plaintiff can not serve as the sole evidentiary basis of establishing an element of a prima facie case of disability discrimination. A person alleging a disability protected by the ADA has a burden of establishing with medical evidence the existence of the alleged disability, and presenting the documentation during the term of employment, not following termination.

ond and third causes of action or over defendant's counter-claim.

**SO ORDERED.**

*Kalekiristos v. CTF Hotel Management Corp.*, 958 F.Supp. 641 (D.D.C.1997), aff'd, 132 F.3d 1481, 1997 WL 812530 (D.C.Cir.1997).

Plaintiff would have had the court consider certain post-termination medical reports, most of which indicated good recovery from surgery and some post-operative pain. The earliest report which suggested a chronic condition was issued March 22, 1999, eight months after plaintiff was fired. Therefore, these reports were irrelevant as to the issue of whether plaintiff suffered a disability at the time of his employment. Likewise, the evidence of a handicapped parking permit which was issued February 5, 1999, seven months after plaintiff's termination, cannot serve as the basis of Fagan's claim to a disability.