**Tracey ALMOND, Plaintiffs,**

v.

**WESTCHESTER COUNTY DEPARTMENT OF CORRECTIONS, Defendants.**

**No. 04 CIV.8222 CM.**

United States District Court, S.D. New York.

March 28, 2006.

Paul N. Cisterino, White Plains, NY, for Plaintiffs.

Jacob E. Amir, Westchester County Attorney's Office, White Plains, NY, for Defendants.

## ORDER AND DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSING THE COMPLAINT

MCMAHON, District Judge.

Plaintiff Tracey Almond brings this action against Defendant Westchester County alleging wrongful discharge from her job as a probationary corrections officer in violation of the Americans with Disabilities Act ("ADA") and the New York State Human Rights Law. Defendant moves for summary judgment dismissing the complaint, on the grounds that (1) plaintiff has not established a *prima facie* case and (2) plaintiff has been unable to rebut the legitimate reasons for discharge that defendant has offered. Because this Court agrees that plaintiff has not established a *prima facie* case, defendant's motion is granted.

## Facts

The relevant facts, as set forth in the Complaint, the parties' Rule 56.1 Statements, and other materials submitted in connection with defendant's motion for summary judgment, are as follows:

On May 27, 2003, plaintiff was hired as a probationary corrections officer in the Department of Corrections for Westchester County. Her appointment was subject to the successful completion of a probationary period, which could last from twelve to fifty-two weeks, beginning on the date on which the probationer begins her training.

On October 14, 2003, Plaintiff arrived at defendant's training facility to begin her training. On the morning of October 17, plaintiff received training in disturbance control and use of the baton. During the afternoon of October 17, Plaintiff participated in cell extraction training (i.e. training in how to remove resistant inmates from cells). Defendant alleges that plaintiff complained that the exercises were "too hard." Defendant also asserts that plaintiff had been exhibiting nervous and erratic behavior throughout the day, crying and complaining that the training was too tough.

Plaintiff admits that she thought the baton training and cell extraction training she went through on October 17 were "quite demanding." (Aff. of Almond at 2–3). After cell extraction training, plaintiff went to the office of Sgt. Osario, one of her commanding officers and instructors, and asked if she could use the telephone to call her doctor. Plaintiff described her own behavior as "hysterical," stating: "I told him I needed to call my doctor and I was hysterical before I went into the office and I am sure everyone heard me." (Dep. of Tracey Almond at 46). Sgt. Osario, who was joined by Sgt. Smithson, another commanding officer and instructor, asked plaintiff why she needed to use the phone. Plaintiff told them that she had over-medi-cated herself, "She wanted to call her doctor," and "She wanted to go home." (Def.'s Exh. J). Sgt. Osario described the plaintiff as "incoherent, not making any sense in her statements." *Id.*

Cpt. Ehren was called in to assist. After hearing that plaintiff had admitted to taking some sort of drug that morning, Cpt. Ehren ordered a reasonable suspicion drug test. It does not appear that any such test was administered before plaintiff was dismissed for the day.

Plaintiff was offered medical treatment at the training facility but she refused it. Instead, she went to United Hospital Emergency Department, where she spent the night. The following day, Almond was transferred to Westchester Medical Center in Valhalla for psychiatric evaluation. Plaintiff was discharged from WMC on October 21.

When she reported for duty on October 22, plaintiff was told by Sgts. Osario and Smithson that she had been placed on administrative leave and would be referred for psychiatric evaluation. There is no indication in the record that this psychiatric evaluation ever took place.

On October 23, 2003, Dr. Diana Stancov, of Westchester Medical Center, sent a letter to the Westchester County Department of Corrections. The letter stated that plaintiff had been admitted to Westchester Medical Center and had spent the weekend in the hospital for observation. Dr. Stancov diagnosed plaintiff with "Psychosis due to General Medical Condition (Ventolin induced)—in other words Delirium . . . ." While ruling out three other possible diagnoses, "Rule out Adjustment Disorder with Anxiety; Rule out Bipolar Disorder; Rule out Brief Psychotic Disorder," Dr. Stancov indicated, "It is also possible although less likely—that Tracy [Almond] has suffered a psychotic episode, due to the stress of training and maybe as

part of Bipolar illness." Dr. Stancov then informed defendant, "Tracy [Almond] was psychiatrically cleared today in our Emergency Room with the recommendation that Tracy continues to be observed in outpatient setting for several weeks on the weekly basis." Def. Ex. F.

On October 30, defendant sent plaintiff a letter terminating her from her probationary position, effective January 7, 2004 (the last day of the twelve week training period). Plaintiff was told not to report for further duty.

Plaintiff subsequently initiated this lawsuit alleging discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* and under New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.*.

### Summary Judgment

Pursuant to Rule 56, a party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Whether any disputed issue of fact exists is for the Court to determine. *Balderman v. United States Veterans Admin.,* 870 F.2d 57, 60 (2d Cir.1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for

trial." Fed.R.Civ.P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation" and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998); *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348 (citations omitted). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### Summary Judgment in ADA Cases

When considering a motion for summary judgment in discrimination cases, "The trial court must be especially cautious in deciding whether to grant this drastic provisional remedy in a discrimination case, because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination." *Belfi v. Prendergast,* 191 F.3d 129, 135 (1999). However, the plaintiff still has the burden of presenting "concrete particulars" to substantiate her claim of discrimination. *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). "The salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Id.*

To establish a *prima facie* case of discrimination under the ADA, plaintiff must establish four things: (1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and

(4) she suffered adverse employment action (in this case, being fired) because of the disability. *Heyman v. Queens Village Comm. for Mental Health for Jam. Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir.1999).

■ While "[t]he burden on the plaintiff of presenting a prima facie case ... is 'minimal,'" *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir.2001) (quoting *James v. New York Racing Ass'n*, 233 F.3d 149, 153 (2d Cir.2000)), it is not nonexistent. Although courts sometimes assume, when deciding motions for summary judgment, that the plaintiff will be able to meet her burden, summary judgment must be granted whenever the undisputed facts, viewed most favorably to the non-moving plaintiff, do not make out a *prima facie* case. *See, e.g., Lanahan*, 15 F.Supp.2d at 384; *Lapsley v. Columbia Univ.–Coll. of Physicians & Surgeons*, 999 F.Supp. 506, 514–15 (S.D.N.Y.1998); *Devlin v. Transp. Commc'n Int'l Union*, Nos. 95 Civ. 0742(JFK), 95 Civ. 10838(JFK), 2002 WL 413919, at *7, 2002 U.S. Dist. LEXIS 4339 (S.D.N.Y. Mar. 14, 2002).

### Plaintiff's ADA Claim ("Count 1")

Here, there is no dispute that defendant is subject to the ADA. However, plaintiff has not made out the second element of her case—that she was "disabled" within the meaning of the ADA.

For ADA purposes, having a disability is more than having some physical or mental impairment. A person is disabled within the meaning of the ADA only if she has an impairment that substantially limits her ability to perform some major life activity. *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

■ In this case, the plaintiff alleges, not that she had a disability, but that she was perceived by defendant as having a disability. In a perceived disability case,

the plaintiff may make out her *prima facie* case by offering evidence tending to show that (1) she had an impairment that was not substantially limiting, but was treated as though the impairment was substantially limiting; (2) she had an impairment that was substantially limiting only because of the attitudes of others toward the impairment; or (3) that she had no impairment at all, but was regarded by her employer as having a substantially limiting impairment. 29 C.F.R. § 1630.2(1)(1)-(3). This case falls under the third prong of the "perceived disability" test. Plaintiff argues that she had no disability at all; she merely took too much medication and suffered a reaction, but was perceived as disabled by the defendant.

■ In addition, as part of her *prima facie* case, plaintiff must introduce some evidence tending to establish that the defendant thought the perceived impairment would limit plaintiff in the performance of some major life activity. *See Sutton*, 527 U.S. at 489, 119 S.Ct. 2139. Consequently, it is plaintiff's burden to identify the impairment defendant perceived her to suffer from and to identify the major life activity that was perceived as substantially impaired by the defendant. *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 154 (2d Cir.1998).

In her singularly unhelpful motion papers, plaintiff has neither specifically identified what her perceived impairment was nor suggested a major life activity that defendant believed was "substantially limited" by that perceived impairment.

The closest plaintiff comes to identifying the nature of the perceived impairment is "the County was *aware* that Almond suffered *some kind* of psychological trauma," and had "*suspicions* that Almond was *using* drugs." (Pl.'s Brief at 3) (emphasis added).

From her reliance on four pieces of evidence—Captain Ehren's directive that

plaintiff take a "reasonable suspicion" blood test; the Department's statement that plaintiff would be required to have a psychiatric evaluation; Dr. Stancov's letter; and the Department's decision to fire her seven days after receiving Dr. Stancov's letter—I intuit that plaintiff is suggesting that the Department viewed her either as (1) a drug addict; (2) mentally ill; or (3) both.

■ Plaintiff has not made out a *prima facie* case that defendant perceived her to be a drug addict. There is no evidence in the record of any such perception, and no such inference can be drawn from the fact that Cpt. Ehren ordered Almond to take a reasonable suspicion drug test (which was, by the bye, never administered). Cpt. Ehren was told that plaintiff had admitted to overdosing on a prescription drug. Corrections Department regulations required him to have Almond tested in the face of that admission. (Ehren EBT at 21) At most, the record suggests that defendant may have thought plaintiff was a casual user or abuser of drugs. Such an individual does not have an impairment within the meaning of the ADA. Nothing in the record suggest that Cpt. Ehren or anyone else thought Almond was a habitual drug user.

Plaintiff also suggests that defendant perceived her as having "some kind of psychological trauma," Def.'s Brief at 3, even though she is not in fact mentally ill. In her brief, plaintiff points out that Dr. Stancov's letter mentions the possibility (albeit the "less likely" possibility) that plaintiff might suffer from bipolar illness.

I will assume for purposes of this motion that plaintiff has met her *de minimis* case burden of showing that the defendant perceived plaintiff to be so impaired (although that is a questionable assumption). Unfortunately for plaintiff, that only gets her halfway home. In order to make out a *prima facie* case that she was "disabled,"

plaintiff also had to identify some major life activity that defendant allegedly believe she was impaired from performing, and offer evidence that would allow a trier of fact to conclude that the defendant held such a perception.

Plaintiff does not identify what major life activity defendant thought she was substantially limited from performing. Since this is a termination case, let me give plaintiff the benefit of the doubt and assume, for purposes of the motion, that the major life activity is working. See *Felix v. N.Y. City Transit Auth.*, 324 F.3d 102, 105 (2d Cir.2003); See *Heyman v. Queens Village Comm. for Mental Health for Jam. Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 73 (2d Cir.1999).

But there is absolutely no evidence in the record that would allow a reasonable trier of fact to conclude that defendant perceived plaintiff as being unable to work. Perhaps defendant perceived her as being unable to be a corrections officer—but that, under the ADA, is not enough.

■ The United States Supreme Court has held that an employer who perceives someone to be disabled needs to perceived that the individual is "precluded from more than one type of job, a specialized job, or a particular job of choice." *Sutton*, 527 U.S. at 491, 119 S.Ct. 2139. Rather, in order to prevail, plaintiff has to establish that defendant viewed her as being precluded from a broad class of jobs by virtue of her perceived disability. *Id.; see also, Rodriguez v. Conagra Grocery Products*, 436 F.3d 468 (5th Cir.2006); *Capobianco v. City of New York*, 422 F.3d 47 (2d Cir. 2005).

The recent Rodriguez case suggests how a plaintiff in a perceived disability case might go about satisfying her *Sutton* burden. Rodriguez, a diabetic who was refused employment at a Conagra plant because a physician believed that his diabetes was not under control, submitted ev-

idence, in the form of answers to interrogatories and deposition testimony from Conagra representatives which demonstrated that Conagra did not think he could perform any sort of manual labor, because his diabetes might cause him to get dizzy or black out and fall. The Fifth Circuit concluded that this evidence could support a jury finding that Conagra perceived Rodriguez as being unable to perform a broad class of occupations—i.e., all manual labor. *Rodriguez*, 436 F.3d 468.

Similarly, the Second Circuit in the *Capobianco* decision describes how a plaintiff might meet this burden. In *Capobianco*, a sanitation worker who suffered from night blindness, a condition in which the person has difficulty seeing in low light, was discharged by the New York City Department of Sanitation because the department mistakenly believed him to be suffering from macular degeneration, a loss of vision in the central part of the eye. Capobianco introduced evidence that the department initially restricted his job functions to only clerical or similar duties. The Department eventually terminated Capobianco's employment because of this perceived disability despite the fact that he had been excelling in the Safety and Training unit. The Second Circuit concluded that this evidence could support a finding that the Department of Sanitation perceived Capobianco as unable to perform the duties of *any* position other than a clerical one. *Capobianco*, 422 F.3d at 47.

In this case, Almond offers no evidence that Corrections personnel viewed her as unable to perform a "broad class of jobs." Indeed, she seems to have ignored *Sutton* completely. The only case that she relies on, *Francis v. City of Meriden*, 129 F.3d 281 (2d. Cir.1997), predates *Sutton* and is no longer good law.

Viewed most favorably to plaintiff (and the court is being charitable), the evidence might suggest that defendant thought she was unable to perform the job of a corrections officer. Defendant fired plaintiff in circumstances that admit of that inference: she was fired immediately after a brief hospitalization for a short-term psychosis, and after her employer received a letter suggesting that the possibility of bipolar disorder had been explored. But that evidence does not fairly support the conclusion that Almond's supervisors thought she was unable to perform a broad class of jobs. There is absolutely no evidence in this record to suggest that anyone at the Department of Corrections thought Almond was incapable of performing any kind of work except corrections work. Indeed, it does not appear that questions like those asked in *Rodriguez* and *Capobianco*—questions that went beyond corrections work to encompass a broad class of jobs—were ever put to any representative of defendant.

Since Plaintiff has failed to meet her *Sutton* burden, this court must grant defendant's motion for summary judgment on the ADA claim. It is dismissed with prejudice.

### Plaintiff's New York State Human Rights Law Claim ("Count 2")

I decline to exercise supplemental jurisdiction over the second count of the complaint, which alleges that plaintiff's discharge violated the New York State Human Rights Law.

■ Claims brought under the ADA and the NYSHRL are not congruent in their elements. The New York Court of Appeals has held, "In New York, the term 'disability' is more broadly defined [than in typical disability statutes such as the ADA]." *New York Division of Human Rights v. Xerox Corp.*, 65 N.Y.2d 213, 218–19, 491 N.Y.S.2d 106, 480 N.E.2d 695 (1985). "Recently, we applied this broad reading of the New York statute, pointing out that 'unlike the federal statute, the state statute does not require [plaintiffs] to

identify a major life activity that is substantially limited by [their] impairment.' " *Treglia v. Town of Manlius,* 313 F.3d 713, 723 (2d Cir.2002) (quoting *Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 154 (2d Cir.1998)).

▮ Because the pendent state law claim is not congruent with the federal claim, it is most appropriate for it to be adjudicated in the New York State courts. Therefore, Count 2 will be dismissed without prejudice to its being refiled. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### Conclusion

The Clerk of the Court is directed to enter judgment dismissing Count 1 with prejudice and dismissing Court 2 without prejudice, and to close the file.

This constitutes the decision and order of the Court.