140 F.3d 144
 7 A.D. Cases 1675, 12 NDLR P 108
 John REEVES, Plaintiff-Appellant,
v.
JOHNSON CONTROLS WORLD SERVICES, INC.; Joel Russell,
individually and in his capacity as Westchester County
Airport Manager; Peter Scherrer, individually and in his
capacity as Assistant Airport Manager of the Westchester
County Airport, Defendants-Appellees.
 Docket No. 97-7685.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 12, 1997.
Decided March 20, 1998.
 
 Raymond G. Kruse, Nanuet, NY, for Plaintiff-Appellant.
 Guy O. Farmer, Foley & Lardner, Jacksonville, FL (Timothy P. Coon, Pete Harrington, Bleakley Platt & Schmidt, White Plains, NY, of counsel), for Defendants-Appellees.
 Before: ALTIMARI, WALKER, and CABRANES, Circuit Judges.
 JOSE A. CABRANES, Circuit Judge:
 
 
 1
 Plaintiff-appellant John Reeves argues on appeal that "everyday mobility"--as he defines it--is a "major life activity" within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., that he suffers from a mental impairment that substantially limits his ability to engage in this activity, and that he is therefore entitled to invoke the protection of the ADA. He also contends that whether or not his condition qualifies as a "disability" for purposes of the ADA, it so qualifies under the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290 et seq. (McKinney's 1993), which he believes sweeps more broadly than the ADA. We hold that the activity described by plaintiff as "everyday mobility" does not constitute a major life activity within the meaning of the ADA, and that plaintiff therefore has not demonstrated that he is disabled for purposes of that statute. Accordingly, we affirm the order and judgment of the United States District Court for the Southern District of New York (Charles L. Brieant, Judge) dismissing plaintiff's ADA claim. However, because we agree with plaintiff that the definition of "disability" in the NYHRL, as construed by the New York Court of Appeals, is broader than that of the ADA, we hold that plaintiff's condition does constitute a "disability" within the meaning of the NYHRL. Insofar as plaintiff has made out a prima facie case of discrimination under the NYHRL, and there exists a triable issue of fact as to whether defendants' proffered reason for dismissing him is pretextual, we vacate the grant of summary judgment for defendants on the state law discrimination claim and remand for further proceedings.[1]
 
 I. BACKGROUND
 
 2
 On appeal from a grant of summary judgment, we view the facts in the light most favorable to the non-moving party, which in this case is the plaintiff. See Lightfoot v. Union Carbide Corp., 110 F.3d 898, 908 (2d Cir.1997). Defendant-appellee Johnson Controls World Services, Inc. ("Johnson Controls") operates the Westchester County Airport in White Plains, New York, under a contract with Westchester County. At the time of his dismissal on July 27, 1995, plaintiff-appellant John Reeves was employed by Johnson Controls as an Airport Operations Supervisor, a position to which he had been promoted in June 1993. Defendants-appellees Joel Russell and Peter Scherrer were the Airport Manager and Assistant Airport Manager, respectively.
 
 
 3
 Four years before his dismissal, during a vacation trip to Florida in July 1991, plaintiff experienced severe anxiety symptoms for the first time. At Disney World, "upon seeing the enormity of the park and of the crowd," he began to sweat, his heart began to pound, he vomited, became "more anxious than [he] had ever felt in [his] life," and passed out. Appellant's Affidavit at 1. After returning home to New York, he experienced the same symptoms whenever he contemplated going to an unfamiliar place. He found he was incapable of making any trip, even to a familiar place, if it involved "even [the] remote possibility of being caught in a traffic tie-up." Id. at 2. In May 1992, he began a six-week program at the Department of Psychiatry Phobia Clinic of the White Plains Hospital Medical Center, which he was able to attend by rearranging his work schedule. After he was promoted in June 1993, Johnson Controls sent plaintiff to attend the Norfolk Aviation Firefighters Training School in Virginia. Because of his symptoms, he was unable to fly to Virginia, and instead drove there accompanied by his aunt.
 
 
 4
 According to plaintiff, on February 23, 1995, he experienced a panic attack while at work for the first time, although he was able to complete his shift. Shortly thereafter he began seeing a psychiatrist, Dr. Marion S. Brancucci, who diagnosed him as suffering from "Panic Disorder With Agoraphobia," as defined in the Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition) of the American Psychiatric Association ("DSM-IV").[2] According to Dr. Brancucci, plaintiff's condition led to pervasive avoidance of a variety of potentially panic-provoking situations including, among other things, "being alone outside the home or being home alone; traveling in an automobile, bus or airplane (under certain conditions); or being on a bridge." Brancucci Affidavit at 4.
 
 
 5
 In early March 1995, plaintiff experienced another panic attack at work, and had to leave work an hour early. He took a leave of absence while he continued his psychiatric treatment. Dr. Brancucci prescribed Prozac for depression and Imipramine (later Klonopin) for panic disorder. In a letter to Johnson Controls dated March 29, 1995, Dr. Brancucci indicated that plaintiff "can work effectively now with unrestricted duty." She advised that she anticipated "an excellent outcome," conditioned upon plaintiff's engaging in "more daytime work in order to promote a normal sleep pattern." In a second letter dated April 6, 1995, she reiterated that plaintiff was "fully able to work," that the medication had "alleviated his symptoms," and that he felt "able to perform his essential job duties this time around." On April 12, 1995, plaintiff returned to work. He arranged informally to exchange some of his overnight shifts with a co-worker, allowing him to work no more than two overnight shifts per week. It is undisputed that plaintiff was fully able to perform his duties after he returned to work.
 
 
 6
 Plaintiff was dismissed by Johnson Controls on July 27, 1995. He was told that the reason for his dismissal was that he had allegedly pressured two Johnson Controls employees, Cunningham and Lindstedt, to buy union raffle tickets and then lied to his supervisors by denying that he had done so. Plaintiff vigorously contests these allegations and suggests that they were concocted by Johnson Controls as a pretext for firing him because he was disabled, or was regarded as disabled by Johnson Controls.
 
 
 7
 At his deposition, Cunningham testified that he bought a raffle ticket from another Johnson Controls employee, Jerry Brienza, while riding in a truck with Brienza and plaintiff, but that plaintiff "was basically staying out of it, trying to stay out of it." He denied that plaintiff had pressured him into buying a raffle ticket. Asked whether he ever told Johnson Controls officials that plaintiff had sold him a ticket, he testified that "I don't think that I would have said it because he didn't do it." He said he did not recall telling anyone that plaintiff had sold him a raffle ticket, although he did not categorically deny having done so. The other employee, Lindstedt, testified that he bought a raffle ticket after listening to Brienza and plaintiff talk about the raffle in order "to shut them up, because I didn't want to hear them any more." However, asked whether he ever told defendant Scherrer that plaintiff had pressured him to buy a raffle ticket, Lindstedt answered, "No, I think the way I said it is just to shut them both up I bought the ticket."
 
 
 8
 The district court granted summary judgment for defendants and dismissed plaintiff's suit, holding that "it is by no means clear that [p]laintiff is disabled within the [ADA]. There is no showing that he could not perform a major life activity or that he was regarded as so impaired." The court also dismissed plaintiff's NYHRL claim "for want of merit." In addition, the court concluded that plaintiff had "presented no evidence whatever which would permit a reasonable juror to find that the reason articulated for firing the plaintiff was pretextual, to cover up an unlawful intent to discriminate."
 
 
 9
 On appeal, plaintiff contends that he was disabled within the meaning of the ADA because "[h]is panic attacks generated in him a phobic avoidance which gradually deprived him of the major life activity of everyday mobility. Because of the dread of panic attacks, [he] became hemmed in by his fears, which incapacitated him from taking vacations or even doing things as routine as going to a shopping mall alone." Appellant's Brief at 21. Plaintiff does not contend that his condition interfered with his ability to work. To the contrary, plaintiff states that when he is
 
 
 10
 engaged in an activity such as work, or some other activity which requires his attention and his focus, his vulnerability to panic or anxiety attacks [is] significantly diminished. On the other hand, when he is placed in a situation in which he must make plans, or ... is presented with the opportunity [of] engaging in discretionary activities which require any form of travel, even some local travel, he is subject to a rise in his levels of anxiety to one degree or another.
 
 
 11
 Id. at 12. Nor does plaintiff contend that his condition prevented him from commuting to work.
 
 
 12
 Plaintiff further suggests that his condition meets the definition of "disability" under the NYHRL because he suffers from a "mental ... impairment ... demonstrable by medically accepted clinical ... diagnostic techniques." N.Y. Exec. Law § 292(21). Finally, plaintiff maintains that the deposition testimony of Cunningham and Lindstedt created a triable issue of fact as to whether Johnson Controls used trumped-up allegations of misconduct as a pretext for dismissing him because of his alleged disability, and that the district court therefore erred by granting defendants' motion for summary judgment.
 
 II. DISCUSSION
 
 13
 We review the district court's order granting summary judgment de novo. See Beatie v. City of New York, 123 F.3d 707, 710 (2d Cir.1997). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) (citation omitted).
 
 A. The ADA Claim
 
 14
 The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees...." 42 U.S.C. § 12112(a). In order to make out a prima facie case of discriminatory discharge under the ADA, a plaintiff must show that (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he was fired because of his disability. See Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir. 1998) (citations omitted). Defendants argue that plaintiff has failed to show that he is an individual with a disability within the meaning of the ADA, and therefore has not made out a prima facie case of discrimination.
 
 The ADA defines "disability" as follows:
 
 15
 (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
 
 
 16
 (B) a record of such an impairment; or
 
 
 17
 (C) being regarded as having such an impairment.
 
 
 18
 42 U.S.C. § 12102(2). Plaintiff does not claim to have a record of impairment. Rather, he suggests that he is disabled either because he has a mental impairment that substantially limits a major life activity or because he was regarded as having such an impairment by Johnson Controls. We consider each of these alternative theories of disability in turn.
 
 
 19
 1. Impairment "Substantially Limits" a "Major Life Activit[y]"
 
 
 20
 The Equal Employment Opportunity Commission ("EEOC") has promulgated administrative regulations implementing the ADA. See 29 C.F.R. § 1630 ("EEOC regulations").[3] They define a "physical or mental impairment" as, inter alia, "any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2) (emphasis added). The parties do not appear to dispute, and we see no reason to question, that Panic Disorder With Agoraphobia constitutes a "mental impairment" for purposes of the ADA. See Zirpel v. Toshiba America Info. Sys., Inc., 111 F.3d 80, 81 (8th Cir.1997) ("[Plaintiff] suffers from a mental impairment, panic disorder...."). Rather, the principal question presented is whether this impairment can be said to "substantially limit[ ]" one or more "major life activities." 42 U.S.C. § 12102(2).
 
 
 21
 According to the EEOC, the term "substantially limits" means, in pertinent part, "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). "Major [l]ife [a]ctivities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). As the words "such as" suggest, this list of major life activities is meant to be illustrative and not exclusive. See Ryan, 135 F.3d at 870 ("The listed activities are 'examples only ....' ") (citing EEOC, Americans with Disabilities Act Handbook I-27 (1992)); Abbott v. Bragdon, 107 F.3d 934, 940 (1st Cir.1997) ("As the regulation itself clearly indicates, this enumeration is not meant to be exclusive ...."), cert. granted in part, --- U.S. ----, 118 S.Ct. 554, 139 L.Ed.2d 396 (1997); Sutton v. United Air Lines, Inc., 130 F.3d 893, 900 (10th Cir.1997) (major life activity "includes, but is not limited to," the activities listed in the EEOC regulations).
 
 
 22
 In this case, plaintiff does not claim that his impairment substantially limits him in the exercise of any of the major life activities listed in the EEOC regulations. He does not, for example, claim that he is substantially limited in his ability to walk or work. Instead, he urges us to recognize as a major life activity, within the meaning of the ADA, the activity he styles as "everyday mobility," and he directs our attention to several cases for supporting authority.[4] We begin by noting that none of these cases actually uses the amorphous term "everyday mobility." Rather, these cases, all decided under the Rehabilitation Act of 1973 ("RHA"), 29 U.S.C. § 701 et seq.,[5] use terms such as "mobility disabled" and "mobility handicapped." In context, it appears that the cited cases use these terms to mean individuals who are physically unable to walk or are wheelchair-bound. In other words, these are cases primarily concerned with what the EEOC regulations refer to as the major life activity of "walking." Inasmuch as plaintiff does not claim that his impairment limits his ability to walk, these cases are not on point. Otherwise, plaintiff cites no authority, from this or any other court, for the proposition that "everyday mobility," as he defines it, is cognizable as a major life activity for purposes of the ADA.
 
 
 23
 The ADA's requirement that, in order to constitute a disability under its terms, an impairment must substantially limit a major life activity underscores that "the impairment must be significant, and not merely trivial." Sutton, 130 F.3d at 898 (citation omitted); see also Runnebaum v. NationsBank of Maryland, 123 F.3d 156, 167 (4th Cir.1997) (en banc) (same); Byrne v. Board of Educ., 979 F.2d 560, 564 (7th Cir.1992) ("The statute's inclusion of the limiting adjectives 'substantial' and 'major' emphasizes that the impairment must be a significant one.") (RHA case). That is, not any limitation, but only a "substantial" limitation, of not any life activity, but only a "major" life activity, will constitute a disability within the meaning of the statute. See Ryan, 135 F.3d at 870 ("[I]n assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities."); Knapp v. Northwestern Univ., 101 F.3d 473, 481 (7th Cir.1996) ("Not every impairment that affects an individual's major life activities is a substantially limiting impairment.").
 
 
 24
 In the absence of a statutory definition, we construe statutory terms such as "major life activities" in accordance with their ordinary and natural meaning. See Smith v. United States, 508 U.S. 223, 228, 113 S.Ct. 2050, 2053-54, 124 L.Ed.2d 138 (1993). The term "major life activit[y]," by its ordinary and natural meaning, directs us to distinguish between life activities of greater and lesser significance. See Runnebaum, 123 F.3d at 170 ("[A]n activity qualifies under the statutory definition as one of the major life activities contemplated by the ADA if it is relatively more significant or important than other life activities."); Abbott, 107 F.3d at 940 (dictionary definitions of the term "major" "strongly suggest that the touchstone for determining an activity's inclusion under the statutory rubric [of major life activity] is its significance").
 
 
 25
 The determination of whether an individual is disabled under the ADA is made on an individualized, case-by-case basis. See Ryan, 135 F.3d at 872 ("[T]he determination whether an impairment 'substantially limits' a major life activity is fact specific ....") (citing Ennis v. National Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 59 (4th Cir.1995)); Sutton, 130 F.3d at 897 (ADA "contemplates an individualized, and case-by-case determination of whether a given impairment substantially limits a major life activity of the individual"); Runnebaum, 123 F.3d at 166 ("[A] finding that [a plaintiff] has a disability ... must be made on an individualized basis."). Accordingly, we held in our recent decision in Ryan that the plaintiff's physical impairment, "ulcerative colitis," in his particular case did not substantially limit the major life activity of "caring for oneself," but we emphasized that "our decision does not mean that colitis may never impose such a limitation." 135 F.3d at 872 (emphasis added).
 
 
 26
 At the same time, we generally agree with the observation of the en banc Court of Appeals for the Fourth Circuit in Runnebaum that "the [ADA]--with its reference to 'the major life activities'--implies that a corresponding case-by-case inquiry into the connection between the plaintiff and the major life activity is not necessary." 123 F.3d at 170 (emphasis in the original). We must determine "whether the impairment at issue substantially limits the plaintiff's ability to perform one of the major life activities contemplated by the ADA, not whether the particular activity that is substantially limited is important to him." Id. (emphasis added and citation omitted); see Abbott, 107 F.3d at 941 (suggesting, without deciding, that the need for a case-by-case analysis of disability "does not necessarily require a corresponding case-by-case inquiry into the connection between the plaintiff and the major life activity"). We do not think that such major life activities as seeing, hearing, or walking are major life activities only to the extent that they are shown to matter to a particular ADA plaintiff. Rather, they are treated by the EEOC regulations and by our precedents as major life activities per se. A plaintiff claiming that her asthma substantially limits her ability to engage in the major life activity of breathing is not first asked to prove that breathing is a major life activity for her. See, e.g., Heilweil v. Mount Sinai Hospital, 32 F.3d 718, 723 (2d Cir.1994). Likewise, in Ryan, the plaintiff's colitis was found in the circumstances presented in that case not to substantially limit the major life activity of "caring for oneself." 135 F.3d at 870. But whether caring for oneself is a major life activity did not turn on the particular facts of that case. Generally, it is only in connection with the determination of whether an impairment "substantially limits" a particular plaintiff's exercise of a major life activity that an individualized inquiry is required.
 
 
 27
 The need to identify a major life activity that is affected by the plaintiff's impairment plays an important role in ensuring that only significant impairments will enjoy the protection of the ADA. An ADA plaintiff could considerably lessen the burden of making an individualized showing of a substantial limitation were he able to define the major life activity as narrowly as possible, with an eye toward conforming the definition to the particular facts of his own case. For example, while it might be hard to show that a very mild cough substantially limits the major life activity of "breathing," it would be far easier to make an individualized showing of a substantial limitation if the major life activity were instead defined more narrowly as, say, the major life activity of "breathing atop Mount Everest." Depending upon how narrowly he may frame the scope of the "major life activity," the plaintiff's burden of making an individualized showing of substantial limitation will vary accordingly. In this regard, we underscore the basic principle, noted above, that the ADA does not guard against discrimination based upon any physical or mental impairment but only those impairments that are significant. Narrowing and diluting the definition of a major life activity, which in turn might lessen the plaintiff's burden of proving a substantial limitation, would undermine the role of the statute's "substantial limit[ation]" inquiry in ensuring that only impairments of some significance are protected by the ADA.
 
 
 28
 In the instant case, by tailoring his definition of the major life activity to fit the circumstances of his impairment, plaintiff would materially lessen his burden of showing a substantial limitation for purposes of the ADA. Plaintiff does not claim that his Panic Disorder With Agoraphobia limits the major life activity of walking. He narrows the frame of reference and hypothesizes a major life activity called "everyday mobility," which he then defines (so far as he does attempt to define it) largely by means of examples that are coextensive with his symptoms. "Everyday mobility," as he defines it, appears to consist of "taking vacations or even doing things as routine as going to a shopping mall alone," Appellant's Brief at 21, taking ground transportation "along a route which might cause [one] to cross a bridge or tunnel or to travel on high roads," Appellant's Supplemental Letter Brief at 2, going to "unfamiliar places that would involve staying overnight," and riding "unaccompanied in trains." Id. Were we to accept this narrow and conveniently form-fitting definition of a major life activity called "everyday mobility," plaintiff would effectively circumvent the hurdle imposed upon him by the statute of establishing that his particular impairment substantially limits a major life activity. If the courts permit individual tailoring of the scope of the major life activity, the case-by-case inquiry into whether an impairment entails a "substantial limit[ation]" is essentially fixed from the outset--it is, in short, pre-determined by a plaintiff.
 
 
 29
 In addition, it is uncontested that plaintiff traveled to and from his employment at Johnson Controls from April 12, 1995, the date of his return to work after his last panic attack, to July 27, 1995, his termination date. Where a plaintiff is sufficiently mobile to travel to and from work on a regular basis, but is unable to travel over bridges or through tunnels, to board trains unaccompanied, or to drive along routes prone to traffic tie-ups and over high roads, he has not alleged a limitation of the kind of "everyday mobility" that might constitute a "major life activity" within the meaning of the ADA. Plaintiff does not, for example, claim that he was so immobile as a result of his mental impairment that he was unable to leave his house or to go to work. While we do not doubt that there are activities other than those listed in the EEOC regulations that are major life activities, see Ryan, 135 F.3d at 870 and while some activity more "major" than plaintiff's definition of "everyday mobility" may well constitute such, we are not persuaded that "everyday mobility," as narrowly defined by plaintiff in this case, is such a "major life activity."
 
 
 30
 2. "Regarded As Having Such An Impairment"
 
 
 31
 Even though plaintiff has not shown that he suffers from an impairment that substantially limits a "major life activity" within the meaning of the ADA, he would still be considered "disabled" for purposes of that statute if he could show that he was "regarded as having such an impairment." 42 U.S.C. § 12102(2)(C). The EEOC regulations elaborate upon this provision of the ADA's definition of disability as follows:
 
 
 32
 Is regarded as having such an impairment means:
 
 
 33
 (1) Has a physical or mental impairment that does not substantially limit a major life activity but is treated by a covered entity as constituting such limitation;
 
 
 34
 (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
 
 
 35
 (3) Has none of the impairments defined [by the EEOC regulations] but is treated by a covered entity as having a substantially limiting impairment.
 
 
 36
 29 C.F.R. § 1630.2(l).
 
 
 37
 Plaintiff does not argue that he is substantially limited in a major life activity only because of "the attitudes of others toward [his] impairment." Id. § 1630.2(l)(2). Nor does he deny having an impairment but assert that he is "treated by [his employer] as having a substantially limiting impairment." Id. § 1630.2(l)(3). He does implicitly invoke the first prong of the EEOC definition of "regarded as" disability by asserting that "a reasonable jury [could] conclude that the Appellees perceived the Appellant as being disabled or substantially limited in his ability to perform a major life activity under the ADA." Appellant's Reply Brief at 6.
 
 
 38
 Defendants do not dispute that Johnson Controls knew of plaintiff's diagnosed mental impairment before he was dismissed. However, "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir.1996). Plaintiff must show that defendants perceived his impairment as substantially limiting the exercise of a major life activity. Plaintiff does not specify which major life activity defendants allegedly perceived as substantially limited by his mental impairment. We reject the possibility that defendants perceived plaintiff as substantially limited in his ability to engage in "everyday mobility" not only because we conclude that, as defined by plaintiff in this case, "everyday mobility" is not a major life activity, see II.A.1, supra, but because plaintiff presents no evidence tending to show that defendants perceived it as such.
 
 
 39
 Although the argument is not clearly advanced by plaintiff, we also consider the possibility that defendants perceived plaintiff as limited in the major life activity of "working." An individual is substantially limited in the ability to work only if he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs." 29 C.F.R. § 1630.2(j)(3)(i); see Wernick v. Federal Reserve Bank of New York, 91 F.3d 379, 383-84 (2d Cir.1996) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."). In this case, the parties agree that plaintiff's impairment did not interfere with his ability to perform his essential job functions. Indeed, plaintiff asserts that when he is engaged in "an activity such as work, or some other activity which requires his attention and his focus, his vulnerability to panic or anxiety attacks [is] significantly diminished." Appellant's Brief at 12. In this light, even drawing all reasonable inferences in favor of plaintiff, as we must in reviewing the grant of summary judgment for defendants, there is no basis for concluding that defendants viewed plaintiff as being substantially limited in his ability to work in his then-current position, much less in "a broad range of jobs." 29 C.F.R. § 1630.2(j)(3)(i). Accordingly, we hold that plaintiff was not "regarded as" having a disability. Because plaintiff neither suffered from, nor was regarded as having, a disability within the meaning of the ADA--and thus is not disabled for ADA purposes--he has failed to make out a prima facie case of discrimination under the statute, and we are required to affirm the summary judgment entered for defendants on the ADA claim.
 
 B. The New York Human Rights Law Claim
 
 40
 1. "Disability"
 
 
 41
 Plaintiff maintains that his mental impairment constitutes a disability for purposes of the NYHRL, whether or not it satisfies the ADA's definition of disability. He contends that the NYHRL defines disability more broadly than does the ADA, and that unlike the federal statute, the state statute does not require him to identify a major life activity that is substantially limited by his impairment. The clear and controlling authority of the New York Court of Appeals' decision in State Division of Human Rights v. Xerox Corp., 65 N.Y.2d 213, 491 N.Y.S.2d 106, 480 N.E.2d 695 (1985), compels us to agree.
 
 
 42
 The NYHRL defines "disability" in pertinent part as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques . ..." N.Y. Exec. Law § 292(21) (McKinney's 1993) (emphasis added).[6] Although the definition is phrased in the disjunctive--"or is demonstrable by medically accepted clinical or laboratory diagnostic techniques"--defendants would have us look exclusively to the first clause of the definition, which seems to resemble the definitions contained in the RHA and ADA. Drawing on district court cases, they argue that the legislative history of the NYHRL clarifies that " 'New York contemplated coverage of the same types of disabilities covered by the federal laws.' " Appellees' Brief at 21 (quoting Fitzgerald v. Alleghany Corp., 904 F.Supp. 223, 229 n. 12 (S.D.N.Y.1995) (citing Executive Dept. Memorandum, 1983 McKinney's Session Laws of N.Y., at 2705)); see also Hendler v. Intelecom USA, Inc., 963 F.Supp. 200, 210 (E.D.N.Y.1997) ("The legislative history of the [NYHRL] indicates that it was intended to cover the same types of disabilities as protected under the ADA and the Rehabilitation Act....").
 
 
 43
 Defendants' argument regarding the legislative history of the New York statute is a strong one, but they overlook--and, indeed, fail to cite--the construction of the statutory definition of disability in the New York Court of Appeals' Xerox decision. At issue in that case was the refusal by Xerox to hire the complainant because she had been diagnosed after a medical examination as suffering from "active gross obesity." Xerox, 491 N.Y.S.2d at 107, 480 N.E.2d 695. The complainant did not allege that her condition limited a major life activity. In fact, she testified that her condition "had not prevented her from performing any task or function .... [and] had not inhibited her in any way, except in carrying bundles for long distances." Id. Xerox argued that the plaintiff was not disabled within the meaning of the NYHRL "because there is no evidence that her condition presently places any restrictions on her physical or mental abilities." Id. at 109, 480 N.E.2d at 698. The court rejected this argument and held that the plaintiff had proved she was disabled for purposes of the state statute. It will be useful to quote from the opinion of New York's highest court at some length:
 
 
 44
 [Xerox's] argument[ ] might have some force under typical disability or handicap statutes narrowly defining the terms in the ordinary sense to include only physical or mental conditions which limit the ability to perform certain activities (see, e.g., [the RHA], defining a "handicapped individual"[7] as a person who "has a physical or mental impairment which substantially limits one or more of such person's major life activities"). However[,] in New York, the term "disability" is more broadly defined. The statute provides that disabilities are not limited to physical or mental impairments, but may also include "medical" impairments. In addition, to qualify as a disability, the condition may manifest itself in one of two ways: (1) by preventing the exercise of a normal bodily function or (2) by being "demonstrable by medically accepted clinical or laboratory diagnostic techniques" [ ].
 
 
 45
 Fairly read, the statute covers a range of conditions varying in degree from those involving the loss of a bodily function to those which are merely diagnosable medical anomalies which impair bodily integrity and thus may lead to more serious conditions in the future.... Thus, the Commissioner [of the State Division of Human Rights] could find that the complainant's obese condition itself, which was clinically diagnosed and found to render her medically unsuitable by the respondent's own physician, constituted an impairment and therefore a disability within the contemplation of the statute.
 
 
 46
 Id. (emphasis added).
 
 
 47
 This literal reading of the statute, taking no account of the seemingly clear legislative purpose to enact a definition of disability coextensive with comparable federal statutes, treats a medically diagnosable impairment as necessarily a disability for purposes of the NYHRL. "Thus, an individual can be disabled under the [NYHRL] if his or her impairment is demonstrable by medically accepted techniques; it is not required that the impairment substantially limit that individual's normal activities." Hazeldine v. Beverage Media, Ltd., 954 F.Supp. 697, 706 (S.D.N.Y.1997). Regardless of the legislative history of the NYHRL (as noted and followed by the district courts in Fitzgerald and Hendler ) indicating that the statutory definition of disability was intended to be coextensive with that of the federal disability statutes, we are bound by the construction of the statute propounded by the state's highest court. See Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967) ("[T]he State's highest court is the best authority on its own law."); West v. American Tel. & Tel. Co., 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940) (stating that a federal court must "ascertain from all the available data what the state law is and apply it rather than ... prescribe a different rule, however superior it may appear"); 17 James Wm. Moore et al., Moore's Federal Practice § 124.20 (3d ed. 1997) ("The state highest court is the final arbiter of state law.").
 
 
 48
 In a recent case, the New York Court of Appeals reaffirmed its construction of the NYHRL in Xerox. See Alesci v. New York State Div.of Human Rights, 91 N.Y.2d 65, 666 N.Y.S.2d 1004, 689 N.E.2d 898 (1997). In Alesci, the complainant flight attendants argued that they were disabled because they were "overweight," as determined by the employer's weight standards. The court held that the complainants were not disabled for purposes of the NYHRL, as construed in Xerox, because they "did not proffer evidence or make a record establishing that they are medically incapable of meeting [the airline's] weight requirements due to some cognizable medical condition. That was crucial in Xerox and is utterly absent here." Id. at 1008, 689 N.E.2d at 902 (emphasis added).
 
 
 49
 In the instant case, defendants do not dispute that plaintiff was diagnosed after examination by a licensed psychiatrist as suffering from a mental impairment--Panic Disorder With Agoraphobia. On appeal, defendants do not appear to challenge the reliability or accuracy of this diagnosis, nor have they suggested that the diagnosis was not based upon "medically accepted clinical ... diagnostic techniques." N.Y. Exec. Law § 292(21) (McKinney's 1993). Had they challenged the diagnosis, this would at most have created a triable issue of fact as to whether or not plaintiff suffered from a mental impairment. Resolving all ambiguities and drawing all inferences in favor of plaintiff, as we must in reviewing the entry of summary judgment for defendants, we find that plaintiff's medically diagnosed Panic Disorder With Agoraphobia constitutes a disability within the meaning of the NYHRL. Accordingly, plaintiff has made out a prima facie case of discrimination under the NYHRL.[8]
 
 2. Pretext
 
 50
 Defendants maintain that even if plaintiff is disabled for purposes of the NYHRL, they did not violate the statute because they dismissed plaintiff for a legitimate, non-discriminatory reason--namely, for alleged misuse of his authority and lying to his superiors.[9] The district court found that no triable issue of fact exists as to whether this proffered basis for the dismissal is merely a pretext for what was actually a dismissal based upon a discriminatory motive. However, we think it is clear that--resolving all ambiguities in favor of plaintiff--the deposition testimony of Cunningham and Lindstedt, the two employees whom plaintiff is alleged to have pressured to buy raffle tickets, standing alone, creates a triable issue of fact as to whether defendants' proffered reason is pretextual.
 
 
 51
 In their sworn deposition testimony, both Cunningham and Lindstedt denied that plaintiff pressured them to buy raffle tickets, contradicting defendants' story. Both also denied having told anyone that they had been pressured to buy a ticket by plaintiff. Cunningham maintained that he bought a ticket from another employee, Jerry Brienza, not plaintiff. Although he did not categorically deny having told others that he bought a ticket from plaintiff, he testified that he did not recall having done so, and that "I don't think that I would have said it because he didn't do it."
 
 
 52
 The district court concluded that "[t]his Court is not the place to try the issue of whether [plaintiff] did in fact lie; all that needs to be shown is that after reasonable inquiry, [d]efendants thought he did, and they fired him for it in good faith, and not because he was disabled, if indeed he was." However, we find that the inconsistencies between the deposition testimony of Cunningham and Lindstedt and the version of events recounted by defendants at least create a triable issue as to the true motivation for plaintiff's dismissal. To the extent that these inconsistencies can only be resolved based upon credibility determinations, such questions of witness credibility are to be decided by the jury. See, e.g., Rodriguez v. City of New York, 72 F.3d 1051, 1061 (2d Cir.1995) ("On a summary judgment motion, the court is not to weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact.").
 
 
 53
 Accordingly, because we find that plaintiff has made out a prima facie case of discrimination under the NYHRL, as it has been interpreted by the New York Court of Appeals, and that a triable issue of fact remains, the grant of summary judgment for defendants on the NYHRL claim is vacated, and the cause is remanded for further proceedings.
 
 III. CONCLUSION
 To summarize:
 
 54
 (1) Because we find that plaintiff's impairment does not substantially limit a major life activity, and because he was not regarded as being so limited, he is not disabled within the meaning of the ADA. Summary judgment for defendants on the ADA claim is affirmed.
 
 
 55
 (2) Because we find that plaintiff's mental impairment constitutes a disability within the meaning of the NYHRL, as construed by New York's highest court, and that a triable issue of fact exists as to whether defendants' asserted reason for dismissing plaintiff is pretextual, the grant of summary judgment for defendants on the NYHRL claim is vacated.
 
 
 56
 (3) The cause is remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 Plaintiff's complaint also raised various claims under New York State common law, most of which were later withdrawn. The district court granted summary judgment for defendants on the remaining common law tort claims, but plaintiff does not appeal the dismissal of these claims. Therefore, that dismissal is unaffected by our resolution of this appeal
 
 
 [2]
 According to the DSM-IV, "[t]he essential feature of Panic Disorder is the presence of recurrent, unexpected Panic Attacks...." A Panic Attack is defined as "a discrete period of intense fear or discomfort that is accompanied by at least 4 of 13" symptoms, which include "palpitations, sweating, trembling or shaking, sensations of shortness of breath or smothering, feeling of choking, chest pain or discomfort, nausea or abdominal distress, dizziness or lightheadedness, derealization or depersonalization, fear of losing control or 'going crazy,' fear of dying, paresthesias, and chills or hot flushes." Joint Appendix at 72. The essential feature of Agoraphobia is listed as "anxiety about being in places or situations from which escape might be difficult (or embarrassing) or in which help may not be available in the event of having a Panic Attack." Id. at 74. "Concerns about the next attack, or its implications, are often associated with development of avoidant behavior that may meet criteria for Agoraphobia ..., in which case Panic Disorder With Agoraphobia is diagnosed." Id. at 76
 
 
 [3]
 "We accord great deference to the EEOC's interpretation of the ADA, since it is charged with administering the statute." Francis v. City of Meriden, 129 F.3d 281, 283 n. 1 (2d Cir.1997) (internal quotation marks and citation omitted)
 
 
 [4]
 The cases cited by plaintiff are Leary v. Crapsey, 566 F.2d 863 (2d Cir.1977), Lloyd v. Regional Transp. Auth., 548 F.2d 1277 (7th Cir.1977), and United Handicapped Fed'n v. Andre, 558 F.2d 413 (8th Cir.1977). See Appellant's Supplemental Letter Brief at 1. Each of these cases concerned legal challenges brought by individuals confined to wheelchairs against transportation authorities, alleging that they failed to make transportation facilities accessible to the disabled
 
 
 [5]
 As a general matter, "[b]ecause the ADA and the RHA are very similar, we look to caselaw interpreting one statute to assist us in interpreting the other." See Francis, 129 F.3d at 284 n. 4
 
 
 [6]
 At the time this action was commenced, the NYHRL's definition of disability read in full:
 The term 'disability' means (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to disabilities which do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held.
 N.Y. Exec. Law § 292(21) (McKinney's 1993). In the instant case, the defendants do not appear to argue that plaintiff was unable to perform the essential functions of his job in a "reasonable manner." The above definition was amended in 1997; the amendment, which did not alter the portion of the definition relevant to this appeal, became effective on January 1, 1998. N.Y. Exec. Law § 292(21) (McKinney's Supp.1997).
 
 
 [7]
 The definition of disability in the RHA was amended in 1992 to substitute the term "disability" for "handicaps." Francis, 129 F.3d at 285 n. 6 (citing Rehabilitation Act Amendments of 1992, Pub.L. No. 102-569, § 102(f)(1)(A), 106 Stat. 4344, 4348)
 
 
 [8]
 Although in this appeal plaintiff does not advance the argument that he was disabled within the meaning of the NYHRL because he had a "condition regarded by others as such an impairment," N.Y. Exec. Law § 292(21), we note that in light of the fact that defendants were aware of Dr. Brancucci's medical diagnosis that plaintiff suffered from a mental impairment, there would also appear to be a triable issue of fact (in connection with the state law claim only) as to whether they regarded him as having a "mental ... impairment ... demonstrable by medically accepted clinical ... diagnostic techniques." N.Y. Exec. Law § 292(21)
 
 
 [9]
 In adjudicating NYHRL claims, New York courts use the familiar burden-shifting framework developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See North Shore Univ. Hospital v. Rosa, 86 N.Y.2d 413, 633 N.Y.S.2d 462, 464, 657 N.E.2d 483, 485 (1995) (citing McDonnell Douglas ) (additional citations omitted)